IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 105,457

DANIEL L. STUECKEMANN and CATHY S. STUECKEMANN,
Trustees of the Stueckemann Living Trust Dated May 13, 2004,
and Any Amendments Thereto,
and
CEDAR LAKE ASSOCIATION, a Kansas Not-For-Profit Corporation,
*Appellants*,

v.

THE CITY OF BASEHOR, KANSAS, A KANSAS MUNICIPAL CORPORATION,
*Appellee*.

SYLLABUS BY THE COURT

1.

Appellate courts review challenges to a city's description of the land it intends to annex for substantial compliance with the relevant statutes. Substantial compliance means compliance in respect to the essential matters necessary to assure every reasonable objective of the statute.

2.

Whether a party has substantially complied with a statute generally involves statutory interpretation, a question over which appellate courts exercise de novo review.

3.

The fundamental purpose of the annexation provisions requiring a description or depiction of the land subject to annexation is to inform the affected stakeholders of the city's decision about what land is to be annexed.

1

4.

Under the facts of this case, the City of Basehor's description and depictions of the land subject to annexation substantially comply with the annexation statutes.

5.

The fundamental purpose of the annexation statutes requiring notice and a public hearing is to afford landowners notice of the city's annexation plan and the opportunity to be heard.

6.

Under the facts of this case, the City of Basehor's correction of the erroneous legal description in the annexation resolutions before publication of the annexation ordinance substantially complies with the annexation statutes.

7.

Appellate courts review a city's service plan for substantial compliance with the relevant annexation statutes.

8.

The purpose of the service plan provisions in the annexation statutes is to inform the affected landowners of the city's decision, what municipal benefits they will receive, and what cost they will incur. The statutes require this notification so the affected landowners may attempt to persuade the city that annexation would not be in the best interests of either party.

9.

A bona fide service plan covering each major governmental and proprietary service to be furnished the land to be annexed will substantially comply with the

annexation statutes. A bona fide service plan is one prepared and submitted by the city in accordance with the statutes in good faith and with honest intentions to implement the plan as submitted.

10.

Under the facts of this case, the City of Basehor's service plan substantially complies with the annexation statutes.

11.

The 2005 adoption of the provision in K.S.A. 2014 Supp. 12-538 permitting a landowner to challenge whether a city's unilateral annexation decision was reasonable did not codify prior annexation caselaw addressing reasonableness. Instead, it expanded the grounds on which a landowner may challenge an annexation decision to include a challenge for substantive reasonableness.

12.

A city's actions are quasi-judicial if state or local law requires: (1) notice to the community before the action; (2) a public hearing pursuant to the notice; and (3) application of criteria established by law to the specific facts of the case. Under this standard, a city's unilateral annexation decision is a quasi-judicial action because the annexation statutes require (1) notice to the community before the action under K.S.A. 2014 Supp. 12-520(a)(1); (2) a public hearing pursuant to the notice under K.S.A. 2014 Supp. 12-520a(a)(1), (b), (e); and (3) application of 16 established criteria to the specific annexation for guidance in determining its advisability at the hearing under K.S.A. 2014 Supp. 12-520a(e).

13.

Reasonableness under K.S.A. 2014 Supp. 12-538 is a correct basis for a landowner challenging, and consequently the resultant standard for a court reviewing, a city's unilateral annexation decision. The challenging landowner has the burden of proving unreasonableness under K.S.A. 2014 Supp. 12-538 by a preponderance of the evidence. In reviewing an annexation decision for reasonableness, a court may not substitute its judgment for that of the decision-maker.

14.

A court reviewing a city's unilateral annexation decision may consider the value of new municipal services in relation to the amount of new taxes imposed. But the suggestion that an annexation is necessarily unreasonable when the value of new services does not exceed the new taxes imposed is without merit.

15.

A court reviewing a city's unilateral annexation decision may consider the inherent benefits residents enjoy by virtue of their proximity to the city.

16.

Under the facts of this case, the City of Basehor's annexation decision was reasonable.

Review of the judgment of the Court of Appeals in an unpublished opinion filed September 7, 2012. Appeal from Leavenworth District Court; DAVID J. KING, judge. Opinion filed April 24, 2015. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*James R. Orr*, of Westwood, argued the cause and was on the briefs for appellants.

*Patrick G. Reavey*, of Reavey Law LLC, of Kansas City, Missouri, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

NUSS, C.J.: This case arises from the City of Basehor's unilateral annexation of Cedar Lake Estates (Estates), a platted subdivision adjoining the City. Daniel L. Stueckemann and Cathy S. Stueckemann, as trustees of the Stueckemann Living Trust, and the Cedar Lake Association (collectively the Stueckemanns) sued the City to invalidate the annexation on numerous grounds. The district court and Court of Appeals rejected all of the Stueckemanns' arguments and upheld the annexation.

On appeal to this court, the Stueckemanns confine their arguments to three distinct issues. Reordered and recast for clarity, the issues, and our accompanying holdings, are as follows:

1. Did the district court and Court of Appeals err by concluding the City's plan adequately describes the land subject to the annexation? No.

2. Did the district court and Court of Appeals err by concluding the City's service plan for police protection and for street and infrastructure maintenance is adequate? No.

3. Did the district court and Court of Appeals err by concluding the City's annexation is reasonable? No.

Accordingly, we affirm the lower courts.

5

The material facts are undisputed. In December 2008, the City—through its City Council—adopted Resolution No. 2008-15 and Resolution No. 2008-16, which together initiated the unilateral annexation of the Estates. The Estates is a platted residential subdivision of approximately 115 acres that adjoins the City's boundary and is accessible from the City's streets.

The Estates have been served by the City's wastewater treatment plant since 2004 when the Kansas Department of Health and Environment required the Estates to discontinue the use of a sewage lagoon. The landowners in the Estates then entered an agreement with the City for their use of the treatment plant in exchange for paying the City 125% of its ordinary sewage user rates.

The City published the annexation resolutions and a proper notice that it would hold a February 9, 2009, public hearing regarding the proposed annexation as required by K.S.A. 2005 Supp. 12-520a. The published resolutions attached a sketch of the area subject to annexation (published sketch).

*The City's initial description of the land subject to annexation*

As required by Kansas' annexation statutes, the City directly notified numerous parties of its intended annexation. Specifically, the City mailed certain documents to all owners of record of the land subject to the annexation, including Daniel and Cathy Stueckemann. The documents included a notice of the February 9 public hearing, which was captioned "Annexation Proposal Cedar Lakes Subdivision," and information about the City's plan for the extension of municipal services to the land.

6

The documents also included three items more specifically identifying the land to be annexed: (1) copies of the City's annexation resolutions containing a legal description; (2) an aerial photograph of the Estates with overlaid lot and boundary lines (GIS map); and (3) a sketch (mailed sketch). The mailed sketch correctly depicts the area subject to annexation. But the resolutions and the GIS map both contain errors in property identification.

Specifically, the legal description in the resolutions erroneously includes Parcel 15.02 for annexation—an unplatted 11.4 acre tract adjacent to the Estates. This error is not repeated in the GIS map or the mailed and published sketches.

While the GIS map correctly excludes Parcel 15.02 in identifying the property to be annexed, the map erroneously excludes Parcel 62. This 2.4 acre parcel near the Cedar Lake dam is an open area within the Estates. No structures may be built there. The published sketch contains the same erroneous omission of Parcel 62. But the mailed sketch and the resolutions correctly include it.

*The City's plan for extending municipal services*

Before the public meeting on February 9, the City provided residents with details regarding its plan for extending municipal services to the Estates. The two municipal services that the Stueckemanns primarily complain about on appeal are police protection and maintenance of streets and infrastructure.

The City notified residents that the Basehor Police Department would patrol the Estates following the annexation. The City first detailed why it believed the Estates' pre-annexation law enforcement—provided by the Leavenworth County Sheriff—was inadequate. The City then explained its own law enforcement coverage, specifically

7

detailing how the Estates would be patrolled by Basehor police. And the City noted its officers already routinely drove through the Estates when patrolling other outlying subdivisions.

The City also provided residents with information regarding the cost of extending its police protection to the Estates. The City showed its entire annual budget for police protection—$741,101. This money comes from the City's general fund, which is funded by taxes on property within the City. Based on this aggregate, the City calculated its annual cost for police protection as $123,520 per square mile. Because the Estates subdivision is 0.18 square miles, the City estimated the cost of extending its police protection there to be approximately $22,200 per year.

Similarly, the City's plan for the extension of its municipal services also provides that the City, instead of Leavenworth County, would be responsible for maintaining the Estates' streets and infrastructure after annexation. In its plan, the City first described the county's current road budget and general maintenance standards. It concluded that the county's street maintenance is "inadequate," based primarily on the county's alleged lack of capacity for maintaining paved and curbed roads like those in the Estates. The City observed many residents of the Estates expressed displeasure at the county's maintenance when it sealed a portion of the paved roads several years previously. Finally, the City also noted the county system was not designed to maintain an enclosed storm drainage system like that found in the Estates.

The City then explained its current street maintenance and repair program, which would cover the Estates after annexation. Excluding a large one-time construction project, the City spent approximately $11,200 annually per mile of roadway. This represents a reduction from the county's annual expenditure per mile of $12,600. Because the Estates has 1.5 miles of streets, the City calculated it would spend approximately

$16,800 per year on the Estates' streets. The City also detailed how its maintenance of streets and infrastructure is funded, explaining that property taxes collected from the Estates would help fund these new services. The City further noted it recently undertook a campaign of curb replacement, patching, milling, and overlaying, from which the Estates would benefit.

*The City's public hearing and adoption of the annexation ordinance*

On February 9, the City held the public hearing on the proposed annexation. More than 50 people attended, including Daniel and Cathy Stueckemann and their attorney. The City's administrator and engineer both made detailed presentations and answered questions about the intended annexation. The presentations included a PowerPoint slide show that comprehensively reiterated the City's plans for the extension of municipal services, including police protection and maintenance of streets and infrastructure. The City also specifically addressed each of the 16 factors a city must consider under K.S.A. 2014 Supp. 12-520a(e) in determining the advisability of an annexation.

After the presentations and questions, the City Council received written testimony and heard oral testimony from numerous residents of the Estates. The majority of them opposed annexation. The City Council specifically heard testimony in opposition to the annexation from the Stueckemanns and their attorney. Additionally, Daniel and Cathy Stueckemann's written comments informed the City Council: "Our goal is to prevent this annexation from going forward at all." Their attorney notified the City Council of its discrepancies in the sketches, GIS map, and legal description of the Estates. At the conclusion of the testimony, and before the public hearing was adjourned, all present were informed that an annexation ordinance would be taken up at the February 17 regular meeting. The City's mailed notice had informed its recipients that a decision on annexation would be made "at a regular city council meeting."

9

The next day the City contacted its engineer to address the concerns raised by the Stueckemanns' attorney about the identification discrepancies. After reviewing the sketches, GIS map, and resolutions' legal description, the engineer confirmed the documents were inconsistent. Among other things, he confirmed that the legal description in the resolutions of annexation erroneously included the 11.4 acre Parcel 15.02 and the GIS map erroneously excluded the 2.4 acre Parcel 62. The engineer accordingly deleted Parcel 15.02 to correct the legal description of the Estates, which the City ultimately included in its final ordinance of annexation.

On February 17, the City Council met in a "work session" to discuss, among other matters, the proposed annexation. Immediately following the work session, the Council held its regular meeting, and all present were informed Parcel 15.02 should not be included in the annexation and the legal description for the land proposed to be annexed now reflected this change. The City Council again heard from Cathy Stueckemann and others in opposition. The City Council ultimately adopted Ordinance No. 548—containing the correct legal description—to officially annex the Estates.

*The Stueckemanns' lawsuit challenging the annexation*

After the City adopted Ordinance No. 548, the Stueckemanns sued the City in Leavenworth County District Court pursuant to K.S.A. 2014 Supp. 12-538, seeking to invalidate the annexation on multiple grounds. The Stueckemanns eventually moved for summary judgment, arguing they were entitled to judgment as a matter of law on the undisputed facts of the annexation. The City responded the Stueckemanns had failed to prove by a preponderance of the evidence that the district court should invalidate the annexation.

10

After oral argument, the district court rejected all of the Stueckemanns' contentions and upheld the City's annexation without referencing the summary judgment standard. Relevant to this appeal, the court specifically rejected arguments that the annexation is invalid because of the erroneous descriptions of the land, inadequacies in the City's service plan, or because the annexation is unreasonable. The Stueckemanns then appealed.

A panel of the Court of Appeals affirmed. *Stueckemann v. City of Basehor*, No. 105,457, 2012 WL 3966521 (Kan. App. 2012) (unpublished opinion). The panel held the City's land descriptions and plan for the extension of municipal services both substantially comply with the statutory requirements. 2012 WL 3966521, at *6-9. It also rejected the Stueckemanns' argument that K.S.A. 2011 Supp. 12-538 requires courts to review de novo the substantive merits of an annexation when reviewing it for reasonableness. Instead, the panel held this statute expressly permitting landowners to challenge the reasonableness of an annexation merely codifies preexisting caselaw which severely limits judicial review and is therefore quite deferential to the City. 2012 WL 3966521, at *10.

We granted the Stueckemanns' petition for review under K.S.A. 20-3018(b), obtaining jurisdiction under K.S.A. 60-2101(b).

More facts will be added as necessary to the analysis.

ANALYSIS

Issue 1: *The district court and Court of Appeals did not err by concluding the City adequately described the land subject to annexation.*

The Stueckemanns urge this court to invalidate the City's annexation because of the inconsistencies and errors in the sketches, GIS map, and legal description in the resolution proposing annexation. They contend the lower courts erred by concluding the City's description and depictions of the land substantially comply with the requirements of the annexation statutes. The City responds that none of the asserted errors or inconsistencies justify invalidating the annexation.

*Standard of review*

The provision under which the Stueckemanns challenge the City's annexation is K.S.A. 2014 Supp. 12-538. Since this statute's creation in 2005, it has provided in relevant part:

> "Any owner of land annexed by a city under the authority of K.S.A. 12-520(a)(1) through (6) . . . , within 30 days next following the publication of the ordinance annexing the land, may maintain an action in district court of the county in which the land is located challenging [1] the authority of the city to annex the land, [2] whether the annexation was reasonable, [3] whether the service plan was adequate and [4] the regularity of the proceeding had in connection with the annexation procedures."

The Stueckemanns essentially base their first challenge—an inadequate description of the land to be annexed—on the statutory grounds of "regularity of the proceeding had in connection with the annexation procedures." We review challenges to a city's description of the land it intends to annex for substantial compliance with the

12

relevant statutes. *City of Lenexa v. City of Olathe*, 233 Kan. 159, 163-64, 660 P.2d 1368 (1983) (citing *Clarke v. City of Wichita*, 218 Kan. 334, 348, 543 P.2d 973 [1975]).

Substantial compliance means "compliance in respect to the essential matters necessary to assure every reasonable objective of the statute." *Sleeth v. Sedan City Hospital*, 298 Kan. 853, 865, 317 P.3d 782 (2014); see also *Sabatini v. Jayhawk Construction Co.*, 214 Kan. 408, Syl. ¶ 1, 520 P.2d 1230 (1974) (applied to annexation). Whether the City substantially complied with the statute generally involves statutory interpretation, over which we exercise de novo review. *Sleeth*, 298 Kan. at 863 (considering substantial compliance); *Dodge City Implement, Inc. v. Board of Barber County Comm'rs*, 288 Kan. 619, 638, 205 P.3d 1265 (2009) (same).

*Discussion*

K.S.A. 2014 Supp. 12-520a and K.S.A. 12-520b set forth certain requirements with which a city must comply before completing a unilateral annexation. For identifying land a city proposes to annex, K.S.A. 2014 Supp. 12-520a establishes two requirements. Its subsection (a)(2) provides the resolution of annexation shall contain a description of the land to be annexed:

> "(a) The governing body of any city desiring to annex land under the authority of K.S.A. 12-520, and amendments thereto, shall adopt a resolution stating that the city is considering the annexation of the land. *The resolution shall:*
>
> . . . .
>
> (2) *describe the boundaries of the land proposed to be annexed*[.]" (Emphasis added.)

The second requirement—a sketch of the land to be annexed—is contained in subsection (c) of the statute which provides in relevant part:

"(c) A copy of the resolution providing for the public hearing shall be mailed by certified mail to each owner of land proposed to be annexed not more than 10 days following the date of the adoption of the resolution. The resolution shall be published in the official newspaper of the city not less than one week and not more than two weeks preceding the date fixed for the public hearing. *A sketch clearly delineating the area in such detail as may be necessary to advise the reader of the particular land proposed to be annexed shall be published with the resolution. A copy of such sketch also shall be mailed to the owner of the property with the resolution.*" (Emphasis added.)

As for a city's plan to extend municipal services to the annexed property, K.S.A. 12-520b requires a report containing a sketch of the land:

"(a) The governing body of any city proposing to annex land under the provisions of K.S.A. 12-520, and amendments thereto, . . . shall, prior to the adoption of the [annexation] resolution provided for in K.S.A. 12-520a, and amendments thereto, prepare a report setting forth such plans. The report shall include:

(1) *A sketch clearly delineating the land proposed to be annexed and the area of the city adjacent thereto to show the following informatio*n:

(A) The present and proposed boundaries of the city affected by such proposed annexation . . . ." (Emphasis added.)

The parties agree the fundamental purpose of these statutory provisions is to inform the affected stakeholders of the municipality's decision about what land is subject to annexation. Consistent with the parties' views, we have held that the purpose of other annexation provisions requiring a description of the land is "to inform the public of the city boundaries as a result of annexation." *City of Lenexa*, 233 Kan. at 164. So to

14

determine whether the City substantially complied with the relevant provisions, we must decide whether documents such as the two sketches, GIS map, and the resolutions' legal description of the Estates were sufficient to inform the Stueckemanns of what land it proposed to annex. See *Sabatini*, 214 Kan. 408, Syl. ¶ 1.

To demonstrate the City's failure to substantially comply with the statutes, the Stueckemanns overall assert that "[n]o one can read [the annexation] plan and determine what [the City] was trying to annex." Both lower courts rejected this argument, concluding the City substantially complied with the relevant statutes requiring identification. *Stueckemann*, 2012 WL 3966521, at *9.

We reach the same conclusion. Because even with the initial identification errors and inconsistencies acknowledged by the City, the Stueckemanns seemed to be able to determine what area the City sought to annex as they actually notified the City Council of the specific discrepancies at the February 9 public hearing. As explained in more detail below, it is clear that neither the initial legal description nor the depictions of the Estates obscured the City's intent about the area subject to annexation.

*The legal description in Resolutions 2008-15 and 2008-16*

As required by K.S.A. 2005 Supp. 12-520a(a)(2), the City included with its annexation resolutions a legal description, *i.e.*, a description of "the boundaries of the land proposed to be annexed." All parties agree the description was accurate except for incorrectly including Parcel 15.02. The Stueckemanns contend this error precludes substantial compliance.

The Stueckemanns rely on *Board of Riley County Comm'rs v. City of Junction City*, 233 Kan. 947, 667 P.2d 868 (1983). There, Junction City adopted a resolution

15

announcing its intention to annex Fort Riley. The resolution described the land as a single tract that included the entire fort, but it also inadvertently and erroneously included more than 1,000 acres of land owned by at least three other entities. Junction City then adopted an annexation ordinance with the same erroneous description. 233 Kan. at 948.

The district court invalidated the attempted annexation based in part on the over-inclusive legal description. On appeal, we affirmed, rejecting Junction City's contention "that the error in the boundary description was trivial and that it should be treated as mere surplusage." 233 Kan. at 952. The Stueckemanns ask us to deliver the same rejection here.

Our decision in *Riley County* is unpersuasive, however, for Parcel 15.02. Although Junction City's description failed to substantially comply with the relevant statutes, the extent of its error is entirely disproportionate to the City's inadvertent inclusion of Parcel 15.02 in the instant case. The description in *Riley County* wrongly suggested an additional area of more than 1,000 acres was subject to annexation. By contrast, the wrongly-included Parcel 15.02 is only 11.4 acres in addition to the Estates' 115 acres.

Further, the City's resolution error in *Riley County* was repeated in its ordinance—the document purporting to complete the annexation. But in the instant case, the City never purported to complete an annexation of Parcel 15.02; it only suggested the parcel was subject to annexation in its resolution of proposed annexation before the February 9 public hearing. After this hearing the City formally corrected the legal description. So the ordinance of actual annexation which passed on February 17, No. 548, includes an accurate description. Accordingly, *Riley County* presents a situation readily distinguishable from the City's inadvertent inclusion of Parcel 15.02 in its resolutions.

Rather than draw guidance from *Riley County*, we look to *City of Lenexa*. There, we considered whether Olathe's erroneous land description invalidated its attempted annexation. In a published ordinance, Olathe misidentified the land as located in Township 14 in Johnson County instead of its intended annexation of land in Township 13. Despite the error, Olathe argued it substantially complied with the statute requiring public notice about the land subject to annexation. We disagreed, noting the "mistake was no ordinary typographical error in spite of which the public could have ascertained the city's true intent." 233 Kan. at 165. We observed that, on the contrary, "[t]he property in Township 14 was a piece of land which *could have been annexed* had the proper procedures been followed," and therefore, "[t]he public had no way of knowing from reading the ordinance an error had been made." 233 Kan. at 165. (Emphasis added.)

Although we concluded Olathe's erroneous legal description invalidated the annexation in *City of Lenexa*, that decision's rationale actually supports our conclusion of validation in the instant case. Here, the City's mistaken inclusion of Parcel 15.02 essentially represents an "ordinary typographical error" where "the public could have ascertained the city's true intent." 233 Kan. at 165. This conclusion is especially valid because the description purported to notify interested parties that the City intended to annex an area it could not have legally annexed. Because Parcel 15.02 is unplatted, it is not subject to unilateral annexation. K.S.A. 2014 Supp. 12-520(a)(1). So in contrast to *City of Lenexa*, the Stueckemanns could—and did—discover the City's error and ascertain its true intent. Accordingly, we reject their argument that the over-inclusive legal description precluded substantial compliance with the statutes that require the City to describe the land subject to annexation.

We also reject the Stueckemanns' ancillary contention that the City's attempt to correct the mistaken legal description violates the public hearing provisions in K.S.A. 2014 Supp. 12-520a(a)(1) and (c). In addition to the specific purpose of notification, we

17

have held the general "purpose of the annexation statutes is to protect the rights of the landowners against unilateral action by a city annexing *their* land." *Crumbaker v. Hunt Midwest Mining, Inc.*, 275 Kan. 872, 884, 69 P.3d 601 (2003) (citing *City of Lenexa*, 233 Kan. at 164). And the statutes seek to accomplish this purpose by affording the landowner notice and the opportunity to be heard, *i.e.*, "to persuade the City that annexation would not be in the best interest of either party." *Clarke*, 218 Kan. at 349-50.

Well before the February 9 public hearing, the City notified the Stueckemanns of its plan to annex their property. The formal notice they received is captioned "Annexation Proposal Cedar Lake Estates Subdivision" and states "[t]he annexation is being pursued under a plan approved by the city council to attach to the city those subdivisions on the perimeter of the city that are connected to the sanitary sewer system or are adjoining the city." The notice's enclosed resolution, 2008-16, states the City "is considering annexation of the Cedar Lake Estates Subdivision, which is a platted subdivision adjoining the city, generally located northeast of 158th Street and Evans Road."

The erroneous inclusion of Parcel 15.02 merely indicated additional land wholly unrelated to the Stueckemanns' property was also subject to annexation. Inclusion of this parcel did not affect their opportunity or ability to oppose the annexation because the evidence reveals both the Stueckemanns and their counsel voiced their opposition at the February 9 public hearing. Moreover, Daniel and Cathy Stueckemann's written comments that day made their position unequivocal: "Our goal is to prevent this annexation from going forward at all." And in advising at the public hearing that its decision would not be made then but at its next Council meeting on February 17, the City acted consistent with its December notice sent to the Stueckemanns, *i.e.*, the annexation decision would be made "at a regular city council meeting" after the February 9 public hearing. We conclude the City satisfied the relevant statutory purposes. See *Crumbaker*, 275 Kan. at 884; *Clarke*, 218 Kan. at 349-50.

Additionally, once the City corrected the legal description to exclude Parcel 15.02 after its February 9 public hearing, it informed those present at its regular council meeting on February 17 that this parcel was not subject to annexation and was no longer included in the legal description. It then permitted additional testimony from Cathy Stueckemann. The Stueckemanns apparently assert the City instead should have restarted the entire annexation process. But granting them a renewed opportunity to again voice their opposition after they were publicly informed of the correction of the legal description constitutes substantial compliance with the statutory purposes recognized in *Crumbaker* and *Clarke*, *e.g.*, protecting the rights of landowners against unilateral annexation of their property by affording them notice and an opportunity to be heard in opposition.

### *The sketches and GIS map*

As required by K.S.A. 2005 Supp. 12-520a(c), the City provided to the affected landowners sketches "delineating the area" it proposed to annex—the published sketch and the mailed sketch. It also provided the mailed sketch to the Leavenworth Board of County Commissioners in support of its plan for extension of municipal services. The Stueckemanns contend that the City failed to substantially comply with these statutory requirements due to errors in the statutorily required published sketch as well as in the GIS map, which is not statutorily required. But it is undisputed that the mailed sketch— the sketch governed by several statutory provisions—is an accurate depiction and correctly notified the Stueckemanns of the area subject to annexation. So the City's mailed sketch fully complies with these provisions.

We acknowledge the City sent the published sketch with its annexation resolutions and notice of the upcoming public meeting and it voluntarily sent the GIS map to all affected landowners to try to provide additional information about what land it sought to

19

annex. We further acknowledge the published sketch and GIS map both incorrectly exclude Parcel 62. The Stueckemanns apparently contend the inconsistency between these documents on the one hand and the accurate mailed sketch on the other constitutes a failure to substantially comply with the relevant statutes. Both lower courts rejected this position, with the panel stating "'there's no indication . . . the legislature intended that kind of strict compliance.'" 2012 WL 3966521, at *7. We agree.

The nature of Parcel 62 makes its erroneous exclusion from the published sketch and GIS map, at best, of marginal relevance to the City's overall depiction of the land. Parcel 62 is a sliver of land near the Cedar Lake dam that comprises only 2.4 acres of the 115 acres proposed for annexation. It is an open area in the dam's spillway on which no structure can be built.

The exclusion of this sliver from two documents did not prevent the Stueckemanns from receiving notice of the City's intentions about the land it proposed to annex. The formal notice's caption made clear, as did the attached Resolution 2008-16, that the City was considering annexing the "Cedar Lake Estates subdivision." Those intentions also were readily apparent from other notifications the Stueckemanns additionally received—the mailed sketch and the legal description—in both the resolution proposing annexation and the later ordinance. See *City of Lenexa*, 233 Kan. at 164-65 (suggesting a description of land with a typographical error that still permits the recipient to ascertain the city's intent substantially complies with the relevant statutes). Ultimately, the Stueckemanns' opposition throughout the whole process to the entire annexation—including Parcel 62—demonstrates the City's intentions were clearly and consistently communicated to them.

Accordingly, we affirm the lower courts' conclusions that the City's identification of the land subject to annexation substantially complies with the annexation statutes.

Issue 2: *The district court and Court of Appeals did not err by concluding the City's service plan for police protection and for street and infrastructure maintenance is adequate.*

The Stueckemanns also urge us to invalidate the annexation because of the alleged inadequacy of the City's plan for the extension of municipal services as required under K.S.A. 12-520b. They specifically attack the plan's provision for police services and for street and infrastructure maintenance, asserting it contains insufficient detail about Leavenworth County's current services and the City's post-annexation plans for them. So they contend the lower courts erred in concluding the City substantially complied with this statute. The City responds it substantially complied with the requirements and the plan is adequate.

*Standard of review*

As with the Stueckemanns' challenge to the identification of the land proposed to be annexed, their challenge to the City's service plan is also per K.S.A. 2014 Supp. 12-538. For the first time in Kansas statutory law, since 2005 that statute has expressly permitted any landowner aggrieved by a city's unilateral annexation to "maintain an action . . . challenging . . . whether the service plan was adequate."

Both parties cite caselaw predating the statute and apparently agree our review of the adequacy of a service plan is unchanged by the 2005 law. We have traditionally reviewed service plans for substantial compliance with the relevant statutes and adopt the same approach here, which again involves statutory interpretation and implicates de novo review. See *Sleeth*, 298 Kan. at 863 (review for substantial compliance requires de novo review); *Clarke*, 218 Kan. at 347 (reviewing service plan for substantial compliance).

21

*Discussion*

K.S.A. 12-520b details the substantive requirements of a city's service plan for land subject to its annexation. It provides in relevant part:

"(a) The governing body of any city proposing to annex land under the provisions of K.S.A. 12-520, and amendments thereto, . . . shall, prior to the adoption of the [annexation] resolution provided for in K.S.A. 12-520a, and amendments thereto, prepare a report setting forth such plans. The report shall include:

(1) A sketch clearly delineating the land proposed to be annexed and the area of the city adjacent thereto to show the following information:

. . . .

(B) the present streets, water mains, sewers and other city utility lines, and the proposed extension thereof[.]

. . . .

(2) A statement setting forth *a plan of sufficient detail to provide a reasonable person with a full and complete understanding of the intentions of the city for extending to the area to be annexed each major municipal service* provided to persons and property located within the city and the area proposed to be annexed at the time of annexation and the estimated cost of providing such services. The plan shall state the estimated cost impact of providing such services to the residents of the city and the residents of the area proposed to be annexed. The plan shall state the method by which the city plans to finance the extension of such services to such area. Such plan shall include a timetable of the plans for extending each major municipal service to the area annexed. The plan shall state the means by which the services currently provided by a

22

township or special district in the area to be annexed shall be maintained by the city at a level which is equal to or better than the level of services provided prior to annexation.'" (Emphasis added.)

As mentioned, substantial compliance means "compliance in respect to the essential matters necessary to assure every reasonable objective of the statute." *Sabatini*, 214 Kan. 408, Syl. ¶ 1. We have held the purpose of the service plan provisions is "to inform the affected landowners of the municipality's decision, what benefits they will receive[,] and what cost they will incur." *Clarke v. City of Wichita*, 218 Kan. 334, 349, 543 P.2d 973 (1975). The statutes require this notification so "the affected landowner may attempt to persuade the City that annexation would not be in the best interest of either party." 218 Kan. at 349-50; see also *City of Leawood v. City of Overland Park*, 245 Kan. 283, Syl. ¶ 2, 777 P.2d 830 (1989) ("The objectives of the annexation statutes are to notify the public and protect the rights of landowners against a city's *unilateral* action in annexing their land.").

So to determine whether the City substantially complied with K.S.A. 12-520b, we must determine whether the plan for police services and street and infrastructure maintenance sufficiently notifies the public of the City's intentions and includes sufficient information to permit a meaningful challenge to the plan. See *Clarke*, 218 Kan. at 349.

In *Clarke*, we provided a detailed discussion about the degree of precision a service plan must contain. There, several landowners challenged two annexations, arguing the City of Wichita failed to substantially comply with the annexation statutes. 218 Kan. at 342. We rejected the landowners' challenge. In addressing the statutory provisions requiring a service plan, we held "the city must first prepare and submit a bona fide plan covering each major governmental and proprietary service to be furnished the territory to be annexed." 218 Kan. at 346.

23

We continued, defining a "bona fide plan" as one "prepared and submitted by the city in accordance with the statute in good faith and with honest intentions on the part of the city to implement the plan as submitted." 218 Kan. at 346. We held a bona fide plan constitutes substantial compliance with the statutes. 218 Kan. at 346-47. Despite our deferential standard, we cautioned cities that "[i]f the plan submitted is a hoax, which is designed only to accomplish the annexation of territory," the annexation would not substantially comply with the relevant statutes. 218 Kan. at 346.

Based on this standard established in *Clarke*, the Stueckemanns must prove that the City's service plan was not submitted in a good faith effort to honestly extend and implement municipal services, *i.e.*, it was a hoax. After considering the Stueckemanns' arguments, both lower courts concluded the City's service plan substantially complies with the relevant statutes. *Stueckemann*, 2012 WL 3966521, at *9. We reach the same conclusion.

### *Police services*

Overall, the City's plan for the extension of police services substantially complies with K.S.A. 12-520b(a) because it demonstrates the City made a good faith effort to inform the affected landowners of the plans it intended to implement for police protection. And specifically, the plan addressed each of the four factors required by K.S.A. 12-520b(a)(2). As the Court of Appeals noted, the past service of the Estates by the City's wastewater treatment system makes it less than likely the City's service plan was "'a hoax . . . designed only to accomplish the annexation of territory.'" 2012 WL 3966521, at *7 (quoting *Clarke*, 218 Kan. at 346.)

First, the City's plan provides an estimate regarding the cost and cost impact of providing its police protection to the Estates. It calculated its entire police budget on a

24

per-square-mile basis and then used that figure to determine an estimated cost for policing the area of the Estates: approximately $22,200 per year. As for estimated cost impact, the Court of Appeals concluded this increase in a total budget of $741,101 was considered by the City as a minimal additional expense. 2012 WL 3966521, at *8. The Stueckemanns criticize the City's method of calculation because it purportedly fails to provide details about the actual cost to police the Estates. But K.S.A. 12-520b(a)(2) expressly requires only "estimated" costs, which the City has provided. So it has fully complied with this statutory requirement.

Second, the City's plan states the means by which the Estates received law enforcement services before the annexation, *i.e*., via the Leavenworth County Sheriff. The plan concludes the sheriff's service is inadequate based on coverage area and explains why the City-provided police services are an improvement over the current level. See K.S.A. 12-520b(a)(2). Specifically, the plan noted the sheriff's current coverage showed only one deputy patrolling 72 square miles plus another roving deputy. By contrast, the City's proposal would include the Estates in an existing district of 2.5 square miles served by one police officer.

The Stueckemanns generally argue that the City's conclusions are "self-serving and unsubstantiated." Although the City does not provide significant detail to substantiate this portion of its plan, there is no indication this portion is a "hoax" or submitted in bad faith. Rather, it is a bona fide plan intended to explain the City's intentions regarding extension of its law enforcement services to the Estates. See *Clarke*, 218 Kan. at 346-47. So it constitutes substantial compliance with this statutory requirement.

Third, the plan fully complies with the statutory requirement that the City demonstrate how it will finance the extension of its police services. See K.S.A. 12-520b(a)(2). The City explained the extension will be paid from its general fund, which is

25

funded by taxes on property within the City. As the Court of Appeals panel noted, this information additionally relates to the first factor: an estimate regarding the cost impact of providing police protection. 2012 WL 3966521, at *8. Finally, while the plan does not contain a specific timetable for the extension of services, it substantially complies with that particular requirement of 12-520b(a)(2) because police services will start immediately upon annexation.

The Stueckemanns also cite K.S.A. 2014 Supp. 12-520a(e) to argue plan inadequacy, pointing out the plan fails to include the information listed there. But as the Court of Appeals correctly noted, this statute merely contains a list of 16 items the City must consider "'[a]s a guide in determining the *advisability* of such annexation.'" (Emphasis added.) 2012 WL 3966521, at *7. Unlike K.S.A. 12-520b(a)(2) and its list of four factors expressly required to be included in the plan, this statute imposes no requirement on the City's plan.

In short, the City's plan for the extension of police protection easily satisfies that general statutory requirement of supplying "sufficient detail to provide a *reasonable person* with a full and complete understanding of the intentions of the city." (Emphasis added.) K.S.A. 12-520b(a)(2). Moreover, the City's plan specifically, and substantially, addresses each of the four factors required by the statute. Accordingly, we affirm the lower courts' conclusions that the City's plan for the extension of police services constitutes substantial compliance with the statutes.

*Street and infrastructure maintenance*

The City's plan for extending its maintenance of streets and infrastructure to the Estates also substantially complies with K.S.A. 12-520b(a). As explained below, the plan

26

is bona fide and overall it supplies sufficient detail so a reasonable person would have a full and complete understanding of the City's intentions for extending these services.

In accordance with the directives contained in subsection (a)(2) of the statute, the City's plan first provides information about road maintenance. It includes detailed calculations regarding the estimated cost and cost impact of providing street and infrastructure maintenance for the Estates: approximately $16,800 per year. Second, the plan also provides the City would finance the extension of these services through property taxes, including those levied on the Estates. This additionally relates to the first factor: an estimate regarding the cost impact of providing this maintenance. Third, it explains the street maintenance the City will provide is better than that currently supplied by Leavenworth County, particularly because of the county's lesser capacity for maintaining paved and curbed roads like those in the Estates. It also notes the county system was not designed to maintain an enclosed storm drainage system, which is part of the Estates' infrastructure.

Finally, as with extending its police services to the Estates, the City did not supply an explicit timetable for providing maintenance of streets and infrastructure. This omission is understandable because those services would commence immediately upon annexation, as evidenced by the inclusion of the Estates in the City's ongoing street maintenance and repair program.

The Stueckemanns generally attack the City's plan for the extension of street and infrastructure maintenance in the same manner they criticized the plan for police protection. They again allege it provides inadequate detail about the cost to maintain specific streets and the alleged insufficiency of the county's maintenance. But as explained, K.S.A. 12-250b(a)(2) only requires the City to make estimated costs, which the City has provided. Additionally, they again assert the City failed to comply with

27

K.S.A. 2014 Supp. 12-520a(e). But as explained, that statute imposes no requirement on the City's service plan. It serves only as a guide in determining the advisability of annexation.

For these reasons, we affirm the lower courts' conclusions that the City's service plan for police protection and for maintenance of street and infrastructure substantially complies with the annexation statutes.

Issue 3: *The district court and Court of Appeals did not err by concluding the City's annexation is reasonable.*

Finally, the Stueckemanns urge us to invalidate the City's annexation because its plan is unreasonable and the lower courts erred by concluding otherwise. They further contend the Court of Appeals erred by severely restricting the contours of "reasonableness." The City essentially responds that its annexation plan was reasonable under any commonly-accepted definition of the term.

*Standard of review*

The reasonableness standard for challenges to annexations is contained in K.S.A. 2014 Supp. 12-538. Since this statute's creation in 2005, it has provided:

> "Any owner of land annexed by a city under the authority of K.S.A. 12-520(a)(1) through (6) . . . , within 30 days next following the publication of the ordinance annexing the land, may maintain an action in district court of the county in which the land is located challenging [1] the authority of the city to annex the land, [2] *whether the annexation was reasonable*, [3] whether the service plan was adequate and [4] the regularity of the proceeding had in connection with the annexation procedures. When determining the *reasonableness* of an annexation in the case of a city challenging the

28

annexation, the court shall include in its considerations the effect the annexation has on the future growth of the city challenging the annexation." (Emphasis added.)

Resolving the parties' disagreement involves interpretation of this statute, over which we exercise de novo review. *In re Estate of Strader*, 301 Kan. 50, 55, 339 P.3d 769 (2014).

We will first determine what the legislature meant in the statute by "whether the annexation was reasonable." And then, to the extent necessary, we will consider that definition as applied to the facts of this case.

*Discussion*

The Court of Appeals held the statutory references to "reasonable" merely codified Kansas' caselaw addressing an annexation's reasonableness. And as a result, the question of reasonableness remains limited to "whether the annexation violated constitutional protections or statutory authority." *Stueckemann*, 2012 WL 3966521, at *5. So according to the panel, "[c]ourts do not pass on the wisdom, necessity, or advisability of legislative acts delegated to municipalities." 2012 WL 3966521, at *5.

By contrast, the Stueckemanns argue the statute's "reasonableness" provision creates an entirely new basis for challenging the City's actions and a new standard for judicial review of them. They contend our review is now de novo. The City agrees with the Stueckemanns that K.S.A. 2014 Supp. 12-538's "reasonableness" is more expansive than the panel's definition based upon pre-2005 caselaw. But it denies our review is de novo.

29

To settle this controversy, a short review of relevant annexation history is in order. Before 1974, no statute specifically granted authority to challenge unilateral annexations on any particular grounds. Caselaw provided that the grounds for challenge—and the court's accompanying standard of review—were quite limited, as the following brief progression demonstrates. See, *e.g.*, *State, ex rel., v. City of Topeka*, 175 Kan. 488, 491, 264 P.2d 901 (1953) ("[T]he advisability of enlarging the territorial limits of a city is a legislative function which cannot be delegated to the court [citation omitted]. The duty of the court is only to determine whether under the facts the city has statutory authority to enact the ordinance under attack."); *State, ex rel., v. City of Overland Park*, 192 Kan. 654, 656, 391 P.2d 128 (1964) ("The wisdom, propriety, necessity or advisability of annexing territory to cities is not a matter for consideration by the courts. [Citations omitted.] The basic function and duty of the courts is to determine whether a city has statutory authority and has acted thereunder in passing an annexation ordinance."); *State, ex rel., v. City of Coffeyville*, 211 Kan. 746, 751, 508 P.2d 1007 (1973) (same).

Ultimately, in *Sabatini v. Jayhawk Construction Co.*, 214 Kan. 408, 412-13, 520 P.2d 1230 (1974), the court rejected the argument that it could review the "reasonableness" of an annexation under the rationale of K.S.A. 12-712 (Corrick), which expressly permitted a court to review the reasonableness of a city's zoning decision. The *Sabatini* court restated that

> "[i]t is not a proper judicial function for a court to inquire into the *reasonableness*,
> wisdom, necessity or advisability of annexing and platting land. In this area of legislative
> function the judicial duty of the courts is limited to the determination of whether the city
> was granted the necessary statutory authority to act and, if so, whether it acted within that
> authority." (Emphasis added.) 214 Kan. at 413.

In 1974, annexation legislation was passed that included a provision that later became K.S.A. 12-520(h). For the first time a statute delineated the grounds on which annexation could be challenged:

"Any owner of land annexed by a city under the authority of this section may within thirty (30) days next following the publication of the ordinance annexing such land maintain an action in the district court of the county in which such land is located challenging the *authority* of the city to annex such lands and the *regularity of the proceedings* had in connection therewith." (Emphasis added.) L. 1974, ch. 56, sec. 4.

In this court's review of annexation challenges brought under K.S.A. 1974 Supp. 12-520, it continued to limit its examination consistent with caselaw predating the statute's passage. As it stated in *Clarke*, 218 Kan. at 348-49:

"The rule to which this court adheres was stated in *State, ex rel., v. City of Overland Park*, 192 Kan. 654, 391 P.2d 128 [1964], where the court held:

'The wisdom, necessity or advisability of annexing territory to cities is not a matter for consideration by the courts. The basic function and duty of the courts is to determine whether a city has statutory authority and whether it has acted thereunder in passing an annexation ordinance.' [Citation omitted.]

"In *Sabatini v. Jayhawk Construction Co*., [214 Kan. at 413] supra, the foregoing rule was paraphrased as:

"'It is not a proper judicial function for a court to inquire into the reasonableness, wisdom, necessity or advisability of annexing and platting land.'"

See also *City of Lenexa v. City of Olathe*, 233 Kan. 159, 163, 660 P.2d 1368 (1983) ("In reviewing an annexation decision by a municipality the function of the court is to determine whether the municipality has statutory authority to act and has acted in accordance with that authority."); *Banzer v. City of Wichita*, 237 Kan. 798, 800-01, 703 P.2d 812 (1985) ("Both parties agree that it is not a proper judicial function for a court to inquire into the reasonableness, wisdom, necessity or advisability of annexing and platting land . . . .") (citing *Sabatini*, 214 Kan. at 413).

In limiting their review consistent with pre-1974 caselaw, some of those courts also specifically rejected arguments that the 1974 amendments to K.S.A. 12-520 now added reasonableness as a ground for challenging annexation and for the scope of judicial review. In *Clarke*, a landowner argued that the traditional caselaw test affirmed in *Sabatini* had changed with the 1974 amendments and the court should now review the reasonableness of an annexation. 218 Kan. at 342. In rejecting this argument, the court held:

> "The 1974 legislative amendment allowing any owner of land annexed by the city to 'challenge the authority of the city to annex such lands and the regularity of the proceedings had in connection therewith' changes our prior law only to the extent that it is no longer necessary that an action protesting an annexation be brought in the name of the state." 218 Kan. at 349.

See also *City of Lenexa v. City of Olathe*, 228 Kan. 773, 774-77, 620 P.2d 1153 (1980) (affirming *Clarke*'s holding that the 1974 legislative amendment allowing a landowner to challenge an annexation did not alter the scope of a court's inquiry).

Given this background, we conclude the 1974 statute—K.S.A. 1974 Supp. 12-520—essentially codified the existing caselaw for grounds to challenge annexation and for judicial review.

We continue our analysis by examining the 2005 statute, K.S.A. 12-538. With the adoption of K.S.A. 2005 Supp. 12-538, the legislature repealed that statute's predecessor, K.S.A. 12-520(h). L. 2005, ch. 186, § 6. As noted, K.S.A. 12-538 added language to what had been contained in K.S.A. 12-520(h), including the provision of two more grounds for landowner challenge to annexation and for resultant judicial review. These were "whether the annexation was reasonable," as well as "whether the service plan was adequate." K.S.A. 12-538. Primarily relying upon *Clarke*, the Court of Appeals panel held that a review for "reasonableness" already existed in annexation caselaw. But it was strictly limited to, and should remain, a review only to determine whether a city either violated constitutional guarantees or exceeded statutory authority. As a result, the panel concluded the legislature's 2005 addition of "reasonableness" as a factor in K.S.A. 2011 Supp. 12-538 merely codified that narrow corridor in Kansas caselaw. *Stueckemann*, 2012 WL 3966521, at *5.

We disagree with the panel for several reasons. First, we observe the application of this narrow definition of reasonableness actually predated *Clarke* and the 1974 amendments the *Clarke* court reviewed. For as the panel itself twice noted, the *Clarke* court stated in 1975:

> "'*A careful study of our cases illustrates* that the court does recognize the "reasonableness" of action taken by a city in connection with annexation as a viable issue, where the action taken by the city is found to violate constitutional guarantees. The same could be said if the action taken by the city in connection with annexation is found to *exceed statutory authorization*.'" (Emphasis added.) *Stueckemann*, 2012 WL 3966521, at *5, 10 (quoting 218 Kan. at 349).

In acknowledging the *Clarke* court's and the panel's equation of limited reasonableness with "exceeding statutory authorization," we also observe the 1974 statute expressly allowed annexation challenges on the bases of "authority of the city to annex

33

such lands" and "regularity of the proceedings had in connection therewith." In other words, those parts of the statute appear to have codified *Clarke*'s view of prior caselaw narrowly defining "reasonableness" as a basis for an annexation challenge.

Once this narrow definition of the reasonableness standard is established in the equivalent language of the 1974 amendments, then the 2005 statute's express addition of "reasonableness" appears to be superfluous to the "authority" component of this standard. See *Gannon v. State*, 298 Kan. 1107, 1146, 319 P.3d 1196 (2014) (citing *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 631, 132 P.3d 870 [2006] ["'There is a presumption that the legislature does not intend to enact useless or meaningless legislation.'"]; *Wright v. Noell*, 16 Kan. 601, 606, 1876 WL 1081 [1876] [Accepting defendant's argument would incorrectly make part of language "manifestly surplusage."]).

In short, there apparently is little, if anything, for the 2005 statute to codify about this narrow concept of reasonableness because that codification already occurred in 1974. So adding "whether the annexation was reasonable" in K.S.A. 12-538 as a basis for annexation challenge and judicial review in 2005 must mean something else. See *Frick v. City of Salina*, 289 Kan. 1, 23, 208 P.3d 739 (2009) (courts presume the legislature acts with knowledge of existing statutory and caselaw when it enacts legislation).

Second, any doubt about whether this particular statutory addition is a substantive change—instead of merely codifying caselaw—is further reduced by other parts of the 2005 statute. Specifically, it adds to the 1974 statutory provisions the following language:

"When determining *the reasonableness* of an annexation in the case of a city challenging the annexation, the *court shall* include in its considerations the effect the annexation has

34

on the future growth of the city challenging the annexation." (Emphasis added.) K.S.A. 2005 Supp. 12-538.

This specific clause seemingly does not relate to a city exceeding its statutory authority or to violating constitutional guarantees, as reasonableness was narrowly defined in *Clarke* and adopted by the panel. So this clause cannot be a codification, or even a clarification, of preexisting law. Rather, it would appear to be a substantive legislative addition to the 1974 law, *i.e.*, an expansion of the traditional notion of annexation reasonableness. If it does not expand the concept of "reasonableness" under the statute, then the entire clause has no apparent purpose, which we presume was not the legislature's intent. See *Gannon*, 298 Kan. at 1146. Even more persuasively, this clause's mandate, *i.e.*, the court "shall" consider, would then be worthless—hardly the legislature's intent when creating an obligation. 298 Kan. at 1141 ("shall" typically is construed as mandatory and judicially enforceable).

Our rejection of the panel's interpretation of K.S.A. 2011 Supp. 12-538 is reinforced by our general precedents distinguishing substantive legislative changes from mere codification of prior caselaw. We have held that the "legislature's revision of existing law creates [a] presumption that [the] legislature intended to change preamendment law." *Graham v. Herring*, 297 Kan. 847, 860, 305 P.3d 585 (2013) (citing *Brennan v. Kansas Insurance Guaranty Ass'n*, 293 Kan. 446, 458, 264 P.3d 102 [2011]); *Hauserman v. Clay County*, 89 Kan. 555, 558, 132 P. 212 (1913).

This presumption of an attempt to change preamendment law becomes even stronger where the amendment contains a radical change to a statute's phraseology. In that event, it is generally perceived as a legislative declaration that the original law did not embrace the amended provision. *Brennan*, 293 Kan. at 459 (presumption is strongest when legislature makes radical change to statute's phraseology) (citing *Estate of Soupene*

35

*v. Lignitz*, 265 Kan. 217, 222, 960 P.2d 205 [1998]). Here, K.S.A. 2014 Supp. 12-538 now expressly speaks when annexation statutes always had been silent on reasonableness as a basis for challenge and scope of judicial review. Additionally, as mentioned, it now mandates a specific factor to be considered by the reviewing court "[w]hen determining the reasonableness of an annexation" after a city challenge on this newly-announced basis. We conclude these departures from prior statutes are significant and reflect "a legislative declaration that the original law did not '"embrace the amended provision."'" 293 Kan. at 459.

As we proceed on our path for a more precise standard of judicial review, we observe the City contends its decision to annex was an exercise of a quasi-judicial function, citing *Reiter v. City of Beloit*, 263 Kan. 74, 85, 947 P.2d 425 (1997). See also *Heckert Construction Co. v. City of Fort Scott*, 278 Kan. 223, 224, 91 P.3d 1234 (2004). The City summarily made this point simply to support its argument that the judicial scope of review was for a post-*Clarke* standard of reasonableness—expanded, but not de novo. But this point does raise some other relevant considerations, including whether our typical standard of review of quasi-judicial functions enters the calculus.

We begin this particular part of our analysis by determining whether the City's annexation decision was a quasi-judicial determination. This court generally has held that a city's actions are quasi-judicial if state or local law requires: (1) notice to the community before the action; (2) a public hearing pursuant to the notice; and (3) application of criteria established by law to the specific facts of the case. *Heckert*, 278 Kan. at 224. Currently, a unilateral annexation by a city under K.S.A. 2014 Supp. 12-520a requires: (1) notice to the community before the action (K.S.A. 2014 Supp. 12-520a[a][1]); (2) a public hearing pursuant to the notice (K.S.A. 2014 Supp. 12-520a[a][1], [b], [e]); and (3) application of 16 established criteria to the specific

annexation for guidance in determining its advisability at the hearing (K.S.A. 2014 Supp. 12-520a[e]).

Accordingly, we conclude that under the three factors articulated in *Reiter* and *Heckert*, a decision to unilaterally annex land under K.S.A. 2014 Supp. 12-520 is quasi-judicial. See *Brown v. U.S.D. No. 333*, 261 Kan. 134, 149, 928 P.2d 57 (1996) (quasi-judicial applies "'to the action, discretion, etc., of public administrative officers or bodies, who are required to investigate facts, or ascertain the existence of facts, hold hearings, weigh evidence, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature'") (quoting Black's Law Dictionary 1245 [6th ed. 1990]); see also *Friends of Bethany Place v. City of Topeka*, 297 Kan. 1112, 1131-32, 307 P.3d 1255 (2013) (city council acting in quasi-judicial role with statutory obligations regarding the investigation of facts and the evaluation of those facts).

With the City's annexation decision established as a quasi-judicial function, we turn for further analytical guidance on our standards of judicial review by examining *143rd Street Investors v. Board of Johnson County Comm'rs*, 292 Kan. 690, 259 P.3d 644 (2011). While admittedly a rezoning decision, it offers some parallels. There, the County offered two alternatives for judicial standards of review for the rezoning decision.

The County first cited K.S.A. 60-2101(d)—a general statute which provides that on appeal the courts may review final orders or judgments made by a political subdivision through, among other things, its exercise of quasi-judicial functions. The court then set out the limited standard for district courts and appellate courts reviewing such quasi-judicial functions:

> "[The court] is limited to determining if the political subdivision's decision fell within the
> scope of its authority; was supported by substantial competent evidence; or was

fraudulent, arbitrary, or capricious." *143rd Street Investors*, 292 Kan. at 709 (citing, inter alia, *Brown*, 261 Kan. at 138.

Under these standards, "'"[a] district court may not, on appeal, substitute its judgment for that of an administrative tribunal."'" *Reiter*, 263 Kan. at 86. And an appellate court reviewing a rezoning decision by the City is held to the same standards as the district court. 292 Kan. at 709. Accordingly, judicial review is deferential to the city or administrative agency.

For the County's alternative standard of judicial review in *143rd Street Investors*, it suggested "one that is unique to zoning cases and examines the reasonableness and lawfulness of a zoning action." 292 Kan. at 710. This standard was first stated in *Golden v. City of Overland Park*, 224 Kan. 591, 595-96, 584 P.2d 130 (1978), and was summarized and enumerated in *Combined Investment Co. v. Board of Butler County Comm'rs*, 227 Kan. 17, 28, 605 P.2d 533 (1980). See also *Zimmerman v. Board of Wabaunsee County Comm'rs*, 289 Kan. 926, 944-45, 218 P.3d 400 (2009).

Like in annexation, reasonableness is a statutorily-recognized basis for challenging a zoning decision. But unlike in annexation, reasonableness has been a statutorily-recognized basis for challenging a zoning decision since 1921. See, *e.g.*, K.S.A. 12-712 (Corrick) (challenger "may have the reasonableness of any [zoning] ordinance or regulation determined by bringing an action, in the district court"). Since 1992, K.S.A. 12-760(a) has specifically provided that any person aggrieved by a zoning decision made by a city or county "may maintain an action in the district court of the county to determine the reasonableness of such final decision." See *Zimmerman*, 289 Kan. at 944.

The *143rd Street Investors* court observed that "[i]ncorporation of the concept of reasonableness distinguishes the standard of review applied in rezoning decisions from

38

the general standard stated in K.S.A. 60-2101(d)," *i.e.*, one limited to basically reviewing the exercise of judicial or quasi-judicial functions. 292 Kan. at 714. En route to this observation, the court noted that regardless of whether the zoning decision was classified as a legislative or quasi-judicial function, Kansas courts have used the "'highly deferential language'" typically applied to judicial review of legislative action. 292 Kan. at 713 (quoting *Zimmerman*, 289 Kan. at 948).

The court in *143rd Street Investors* also observed that "[t]he appropriateness of testing a decision for reasonableness is reinforced by Kansas statutes that incorporate reasonableness as the guiding factor in either a court's review of a zoning decision or in the zoning body's consideration of zoning issues. See, *e.g.*, K.S.A. 12-760." 292 Kan. at 714. Faced with these two competing standards of review—the limited grounds for reviewing quasi-judicial functions under K.S.A. 60-2101(d) and *Brown* or the "highly deferential" limited review for reasonableness under K.S.A. 12-760(a)—the court ultimately chose the latter, reviewing for reasonableness as articulated in *Golden* and *Combined Investment*. *143rd Street Investors*, 292 Kan. at 715.

Like the court in *143rd Street Investors*, we are faced with the general judicial review statute, K.S.A. 60-2101(d), which is typically used for examining judicial and quasi-judicial functions of a political subdivision. Like that court, we are also faced with a statute that particularly establishes reasonableness as a basis for challenging specific decisions of a political subdivision—there, zoning, and here, annexation. Compare K.S.A. 12-760 (any person aggrieved by a zoning decision made by a city or county "may maintain an action in the district court of the county to determine the reasonableness of such final decision"), with K.S.A. 2014 Supp. 12-538 (landowner "may maintain an action in district court . . . challenging . . . whether the annexation was reasonable").

39

Consistent with our analysis in *143rd Street Investors*, we hold reasonableness under K.S.A. 2014 Supp. 12-538 is not only a correct basis for a landowner challenging, but also the resultant standard for a court reviewing, a city's annexation decision. This conclusion is particularly valid when, as here, the Stueckemanns specifically brought their action in district court on the grounds of challenge articulated in K.S.A. 2014 Supp. 12-538, *i.e.*, "whether the annexation was reasonable." Moreover, that the annexation is "not reasonable" is one of the specific bases they have consistently asserted to the appellate courts. They do not challenge the annexation, for example, under *Brown*'s grounds that the decision was not within the City's scope of authority or not supported by substantial competent evidence. 261 Kan. at 138.

In addition to the reasoning expressed in *143rd Street Investors*, our conclusion is also supported by another rationale. K.S.A. 2014 Supp. 12-538 specifically establishes reasonableness as a basis for challenge and judicial review, while the grounds for judicial review of a quasi-judicial decision under K.S.A. 60-2101(d) and *Brown* are rules of general application. In other words, they apply to a myriad of decisions made by political or taxing subdivisions or their agencies. So our adoption of reasonableness as a basis for judicial review of a unilateral annexation decision is also consistent with our preference for specific rules over general ones. See *Vontress v. State*, 299 Kan. 607, 613, 325 P.3d 1114 (2014) (a specific statute controls over a general one when the relevant provisions overlap); see also *State v. Williams*, 299 Kan. 911, 930, 329 P.3d 400 (2014) (rule that general statute should yield to specific one is rule of interpretation used to determine which statute legislature intended to be applied in particular case).

In further determining the standards for a reviewing court to apply, we perceive a common thread running throughout challenges to decisions made by political subdivisions or administrative agencies—regardless of the grounds—is that the challenger has the burden to demonstrate the decision should be reversed or declared

40

void. See *Shawnee Mission Med. Center v. Kansas Dept. of Health & Environment*, 235 Kan. 983, 988, 685 P.2d 880 (1984) ("burden of proof lies with party challenging" administrative agency's action; now codified at K.S.A. 2014 Supp. 77-621[a][1]); *Combined Investment Co.*, 227 Kan. at 28 (rule in zoning); see also *Chandler v. City of Little Rock*, 351 Ark. 172, 176, 89 S.W.3d 913 (2002) (burden of proof in an action to prevent annexation is placed on party opposing annexation). Another thread, albeit less common, is that the challenger must meet its burden by a preponderance of the evidence. *Combined Investment Co.*, 227 Kan. at 28 (rule in zoning). Accordingly, we hold that for challenges to unilateral annexations, the challenging landowner has the burden of proving unreasonableness under K.S.A. 2014 Supp. 12-538 by a preponderance of the evidence.

Another common thread running throughout challenges to decisions made by political subdivisions or administrative agencies is that a reviewing court may not substitute its judgment for that of the decision-maker. See, *e.g.*, *Denning v. Johnson County Sheriff's Civil Service Bd.*, 299 Kan. 1070, 1076, 329 P.3d 440 (2014) (sheriff's civil service board); *Reiter*, 263 Kan. at 86 (an administrative tribunal); *Combined Investment Co.*, 227 Kan. at 28 (board of county commissioners). Accordingly, we hold in annexation challenges, no reviewing court may substitute its judgment for that of the decision-maker.

With the standard for reviewing "whether the annexation was reasonable" now firmly established, we return to considering its application to the facts of the instant case. The panel applied the narrow test for reasonableness articulated in *Clarke.* So after concluding no violations of constitutional guarantees were apparent and rejecting plaintiffs' claims the annexation exceeded statutory authorization, it held the City's action of annexation was reasonable. *Stueckemann*, 2012 WL 3966521, at *10. Accordingly, it did not review the proceedings under the more expansive concept of reasonableness we articulate today. The district court, however, did perform a more expansive inquiry.

41

Without referencing *Clarke*, the district court made a number of observations, findings, and conclusions that functionally broadened that 40-year-old opinion. The district court recognized its first order of business was to determine its standard of review. It acknowledged it was reviewing an annexation decision made by the duly elected representatives of a municipality representing the executive branch of government. It next acknowledged the judicial branch therefore should be deferential to annexation decisions of the City but should not simply rubber stamp them. Rather, "the legislature specifically said that I should determine whether [the decision] was reasonable. But that does not mean that I'm supposed to substitute my individual judgment as a member of the judicial branch as to the wisdom of this annexation."

The district court explained that in its review of the annexation decision, its function

> "is to determine whether the party with the authority in annexation matters . . . in exercising their responsibilities did so in accordance with the law within their authority and did so *in a reasonable manner*. If I were to disagree about whether I think it's a wise decision for Cedar Lake Estates to become a part of the City of Basehor, that's not the right standard. It's not for me to decide. It's to decide whether the executive authority of the municipality made its decision in a *reasonable* manner and can support that decision." (Emphasis added.)

In its review for reasonableness, the district court began by characterizing the general nature of the Stueckemanns' argument as "whether a city can secure additional tax revenues through property taxes by annexation without providing anything of value to the residents." The panel agreed with this characterization, stating the Stueckemanns primarily contended the annexation was unreasonable because they "'gained nothing but a whopping tax bill.'" *Stueckemann*, 2012 WL 3966521, at *10. The Stueckemanns have

42

never objected at any stage of their litigation to this portrayal of the general nature of their argument for "unreasonableness."

In considering this "no value thus unreasonable" argument, the district court asked "whether a reasonable person would consider that the services being provided give [residents] value for their additional tax dollar." The court ultimately rejected this argument, concluding "to say that no value is being provided is not reasonable in my judgment." In the court's analysis, it then evaluated four different City services provided to the Estates and calculated the monetary value of each. Those services are the extension of: (1) police protection; (2) street and infrastructure maintenance; and (3) trash service. They also include the continuation of existing access by the Estates to the City's wastewater treatment plant.

For police protection, the district court agreed that the City's calculations based upon cost per square mile would provide this service for approximately $22,200 per year. The court also performed its own calculations based upon percentage allocation of mill levy to police service and concluded the service would be provided for approximately $23,700 per year.

It additionally performed other calculations using a third method—based upon population served in the City and in the Estates. Acknowledging the Estates represented an approximate 9% population increase in the City, it calculated a 9% increase of the police department budget of $741,000 would produce $66,699 per year for police protection in the Estates. The court concluded that any one of these three approaches "would indicate that value is being returned in a significant degree."

For streets and infrastructure maintenance, the court calculated that spreading the City's general streets budget (less the cost of a designated project) of $492,523 over the

City's 44 miles of maintained roads created a figure of $11,193 spent per mile. Similar to the City's calculations, it determined that multiplying the street mileage in the Estates of 1.5 miles by that figure per mile produced $16,790 of annual value for street maintenance in the Estates. The court held this number "suggests that there is a significant return to the residents that can be expected from street maintenance."

For trash service, the court recognized the record evidence showing the City trash services cost less than the Estates' private services. Specifically, it noted that using the City services saves approximately $8.65 per month for each property in the Estates, which results in a total annual savings of $11,002. The court concluded "that is a substantial savings."

Finally, for wastewater treatment, the district court acknowledged the City has allowed the Estates to receive service from the municipal treatment plant. The court noted the landowners after annexation would continue to benefit from the City's plant. But instead of continuing to pay a surcharge, *i.e.*, 125% of the City's ordinary sewage rates, after annexation the landowners in the Estates would pay the City's ordinary rates. The court observed this change produced real economic benefit, stating "as a part of now becoming a part of the city, the average bill will decrease $8.91 per month." The annualized savings for all the Estates residents was calculated as $11,333. The court held "[v]alue is being provided in connection with wastewater treatment as part of becoming a part of the city."

The district court further determined that according to the record, to extend—and to continue—these 4 primary municipal services would cost the Estates owners approximately $108,000 in additional property taxes each year. It compared these additional taxes to its valuation of the services provided by the City for the Estates residents: (1) $22,200 to $66,000 for police protection; (2) $16,790 for street

maintenance; (3) $11,002 for trash service; and (4) $11,333 for wastewater treatment. It concluded this range of additional services provided total financial benefits to the Estates of between $38,990 and $83,489 per year.

After utilizing its aggregate approach, the court rejected Stueckemanns' "no value thus unreasonable" argument, ultimately concluding the City "acted with reasonableness." We agree.

The Stueckemanns hint at a requirement that any value—whose existence they continue to deny—must be equal to, or greater than, the new cost imposed for the same, or greater, level of service provided by annexation. So if not at least equal, the plan is unreasonable. In addressing this intimation, we first look at the plain language of the statute. See *Gannon v. State*, 298 Kan. 1107, 1143, 319 P.3d 1196 (2014) (best and only safe rule for ascertaining intention of the makers of written law is abide by language they have used). We observe K.S.A. 2014 Supp. 12-538 does not expressly establish that an annexation suit can challenge "equivalence" but simply that it can challenge whether the annexation is "reasonable," which denotes a lower standard. Compare Black's Law Dictionary 658 (10th ed. 2014) (defining equivalent as "[e]qual in value, force, amount, effect, or significance"), with Black's Law Dictionary 1456 (10th ed. 2014) (defining reasonable as "[f]air, proper, or moderate under the circumstances).

And on the particular issue of whether the value of benefits extended to the area of annexation must be greater than or equal to the new taxes imposed, we draw further guidance from the Mississippi Supreme Court. Like Kansas, Mississippi is one of the few states where the judiciary is charged by statute with reviewing whether a city's proposed annexation is unreasonable. See Miss. Code Ann. § 21-1-33 (2007). As the court stated in *Texas Gas Transmission Corp. v. City of Greenville*, 242 So. 2d 686, 690 (Miss. 1970):

"The argument that appellant will not receive benefits commensurate to its increased tax burden is not well taken. We pointed out in *Kennedy v. City of Kosciusko*, 203 Miss. 4, 33 So. 2d 285 (1948), on this exact issue, that:

'Even so it (taxation) would in any event have to be so disproportionate to the compensating benefits *as to become unreasonable*. (203 Miss. at 9, 33 So. 2d 286).'" (Emphasis added.)

See also *In re Enlarging, Extending and Defining*, 109 So. 3d 529, 560 (Miss. 2013) ("'The mere fact that residents and landowners will have to start paying city property taxes is not sufficient to show unreasonableness.'").

We adopt the same reasoning here. The Stueckemanns' intimation that an annexation is unreasonable if the value of new municipal services is not at least equal to the amount of new taxes imposed is without merit.

Before concluding, we note the district court also found other value is bestowed upon the Estates, *i.e.*, its proximity to a city whose benefits the landowners utilize, including use of the City streets to access the Estates. The court specifically stated, "They're a part of being a resident of the city and are one of the amenities or services that are provided of being a resident to the city and so to spread them over the [Estates], I think, is an appropriate measure." The court continued:

"If certain members of the residents of Cedar Lake Estates as they've indicated and some of the comments made at the public hearing, the written comments, didn't use these services, it doesn't mean that they're not there and affect the quality of life and affect the property values that are associated with living in the area. And those things also provide value and for that *value it is not unreasonable* to expect parties to pay for them."

46

The Stueckemanns argue this determination is unsupportable. They cite *City of Topeka v. Board of Shawnee County Comm'rs*, 252 Kan. 432, 447, 845 P.2d 663 (1993). But that case is readily distinguishable. It involved a county's denial of a city's petition to annex land adjacent to it. Accordingly, it involved a completely different statute: K.S.A. 12-521(c). Unlike the unilateral annexation statutes at issue in the instant case, that statute requires a board of county commissioners to determine whether the proposed annexation would cause "manifest injury" to the property owners in the area. 252 Kan. at 447. In *City of Topeka*, the district court affirmed the Board's denial, holding that "substantial evidence supported the Board's conclusion that property owners would suffer manifest injury if the annexation were approved." And this court affirmed the district court, holding it correctly determined that substantial evidence supported the Board's findings. 252 Kan. at 447.

Instead of relying on our caselaw addressing manifest injury under K.S.A. 12-521, we again draw guidance from the Mississippi Supreme Court and its review of a state statute with parallels to K.S.A. 2014 Supp. 12-538. In evaluating annexation reasonableness, Mississippi courts examine "whether property owners and other inhabitants of the proposed annexation area have in the past, and for the foreseeable future unless annexed, will enjoy the economic and social benefits of proximity to the municipality without paying their fair share of the taxes." *In re Enlarging, Extending and Defining*, 109 So. 3d at 540; see also *Extension Boundaries of Tupelo v. Tupelo*, 94 So. 3d 256, 267 (Miss. 2012); *In re Enlargement of Mun. Bound. of Clinton*, 955 So. 2d 307, 312 (Miss. 2007). *Cf. Big Sioux Tp. v. Streeter*, 272 N.W.2d 924, 926 (S.D. 1978) ("A natural and *reasonable annexation* may result from the following justifications: . . . an outflow of benefits including services and facilities to the outlying territory without a corresponding inflow of monetary contribution for such benefits resulting in an uncompensated burden to the municipal corporation . . . ."). (Emphasis added.)

47

The district court's consideration of intrinsic benefits that the Estates' residents enjoy because of their proximity to the City is consistent with these courts' consideration of the economic and social benefits residents derive by living near a municipality. In *Clinton*, the court concluded this factor supported finding the annexation was reasonable because residents of the proposed annexation area benefitted from the city's recreational facilities, medical services, libraries, educational opportunities, and community centers. 955 So. 2d at 327-28. As the district court found, the same is true in the instant case. Although it is difficult to quantify the economic value of these benefits, the district court did not err in considering them in its reasonableness calculus. Residents of the Estates have benefitted—and will continue to benefit—from their property adjoining the City. Those benefits additionally support the reasonableness of the annexation.

We have reviewed the record, examined the City's annexation decision for reasonableness under the standard we have articulated today, and come to the same conclusion as the district court. The annexation decision was reasonable.

The judgment of the Court of Appeals affirming the district court's refusal to invalidate the annexation is affirmed. The judgment of the district court is affirmed.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 105,457 under the authority vested in the Supreme Court by K.S.A. 20-2616 to fill the vacancy on the court created by the appointment of Justice Nancy Moritz to the United States 10th Circuit Court of Appeals.