IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 104,318

FRANK DENNING,
Sheriff of Johnson County, Kansas,
*Appellee*,

v.

THE JOHNSON COUNTY, KANSAS,
SHERIFF'S CIVIL SERVICE BOARD,
*Appellee*,

and

MICHAEL MAURER,
*Appellant*.

SYLLABUS BY THE COURT

1.

K.S.A. 19-805(a) permits a county sheriff to appoint, promote, demote, and dismiss additional deputies and assistants necessary to carry out the duties of the office, for whose official acts the sheriff is responsible.

2.

K.S.A. 19-4303 *et seq.* requires counties designated as "urban area" counties and counties having certain populations to establish a sheriff's civil service system.

3.

The duties of a sheriff's civil service board are outlined in K.S.A. 19-4311 and include the duty to conduct hearings and hear complaints by or against personnel for the purpose of demotion, suspensions, or removal of personnel. K.S.A. 19-4311(h).

1

4.

K.S.A. 19-4327(a) provides that the sheriff may dismiss any permanent employee when the sheriff considers that the "good of the service" will be served thereby. But the statute further specifies that no permanent employee shall be dismissed for political, religious, or racial reasons.

5.

Under K.S.A. 19-4327(b), a permanent employee can seek review of his or her dismissal by requesting a hearing before a sheriff's civil service board. The sheriff's civil service board is authorized to receive evidence at the hearing and to determine the reasonableness of the sheriff's personnel decision.

6.

A sheriff's civil service board is authorized under K.S.A. 19-4327(d) to approve or disapprove the sheriff's dismissal of a permanent employee and may order reinstatement of a dismissed employee with back pay, sustain the dismissal, or sustain the dismissal with certain conditions.

7.

When conducting a hearing pursuant to K.S.A. 19-4327, a sheriff's civil service board exercises quasi-judicial functions. K.S.A. 60-2101(d) permits appeals to a district court from a judgment rendered or final order made by a political or taxing subdivision, or any agency thereof, exercising judicial or quasi-judicial functions. Consequently, a party aggrieved by a sheriff's civil service board decision may seek judicial review of that decision under K.S.A. 60-2101(d).

2

8.

When an appeal is taken to the district court under K.S.A. 60-2101(d), the district court may not substitute its judgment for that of the political or taxing subdivision or agency, and the court's scope of review is limited to determining whether the challenged order was within the subdivision or agency's scope of authority; was substantially supported by the evidence; or was fraudulent, arbitrary, or capricious. This same scope of review applies upon further appeal to the appellate courts.

9.

Administrative agencies are creatures of statute and their power is dependent upon authorizing statutes; therefore, any exercise of authority claimed by the agency must come from within the statutes.

10.

The plain language of K.S.A. 19-4327(b) and (d) authorizes a sheriff's civil service board to receive and consider evidence for and against a dismissal in determining the reasonableness of the sheriff's personnel decision, to approve or disapprove of the sheriff's decision, and to make appropriate orders based on its findings and conclusions.

11.

When a sheriff's civil service board conducts a hearing requested by a dismissed employee, it performs a quasi-judicial function, essentially sitting as an appeals board, and its role is to determine the reasonableness of the sheriff's personnel decision.

12.

Generally, a decision is reasonable if it is substantially supported by the evidence. Substantial competent evidence possesses both relevance and substance and provides a substantial basis of fact from which the issues can be reasonably determined.

3

Review of the judgment of the Court of Appeals in 46 Kan. App. 2d 688, 266 P.3d 557 (2011). Appeal from Johnson District Court; JAMES F. VANO, judge. Opinion filed July 11, 2014. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Morgan L. Roach*, of McCauley & Roach, LLC, of Kansas City, Missouri, argued the cause, and *Jeff S. Kratofil*, of the same firm, was with him on the briefs for appellant Michael Maurer.

*Michael F. Delaney*, of Spencer Fane Britt & Browne LLP, of Overland Park, argued the cause, and *Michael C. Leitch*, of the same firm, was with him on the brief for appellee Johnson County, Kansas, Sheriff's Civil Service Board.

*Lawrence L. Ferree, III*, of Ferree, Bunn, O'Grady & Rundberg, Chtd., of Overland Park, argued the cause, and *Grant M. Hash*, of the same firm, was with him on the brief for appellee Frank Denning.

The opinion of the court was delivered by

MORITZ, J.:  This case began innocuously enough when Johnson County Sheriff's Department Master Deputy Michael Maurer cracked a department vehicle's windshield with a binder while attempting to shoo a bothersome horsefly. While the horsefly's life may have ended, the long and tortuous factual and procedural history of this case had just begun.

Maurer initially reported the incident by writing "Crack in windshield—rock" on a yellow sticky note and leaving the note for his commanding officer, Sergeant Joe Greenwood. The next morning, Maurer briefly spoke with Greenwood and advised him the crack on the windshield had "spiderwebbed" as the result of a rock chip. But another deputy who witnessed the horsefly incident soon reported that Maurer caused the damage when he hit the windshield with the binder. Maurer eventually responded to questions

regarding the incident in two separate written reports and disclosed additional facts regarding his role in damaging the windshield.

After an internal investigation and hearing before an internal review board, Johnson County Sheriff Frank Denning terminated Maurer's employment for violating the department's professional standard on truthfulness. In doing so, Denning adopted the position of the review board recommending termination based on Maurer's false statements in the sticky note and his verbal statement to his commanding officer indicating the windshield damage was caused by a rock rather than Maurer's own actions.

Maurer appealed to the Johnson County Sheriff's Civil Service Board (CSB), and the CSB reversed Denning's decision and ordered Maurer's reinstatement. Denning appealed to the district court, and the district court reversed the CSB's decision and remanded the case to the CSB for further proceedings. Maurer appealed the district court's decision to the Court of Appeals, which dismissed the appeal for lack of jurisdiction, reasoning the district court's decision to remand the case to the CSB for further proceedings was not a final order. On remand, the CSB reversed itself, upholding Denning's decision to terminate Maurer. Maurer appealed to the district court, and the district court affirmed the CSB's second decision. Maurer appealed to the Court of Appeals, and the panel majority affirmed both district court decisions, ultimately upholding Maurer's termination. Judge Leben dissented and would have affirmed the CSB's first decision upholding Maurer's reinstatement. *Denning v. Johnson County Sheriff's Civil Service Board*, 46 Kan. App. 2d 688, 266 P.3d 557 (2011), *rev. granted* 294 Kan. 943 (2012).

We granted Maurer's petition for review under K.S.A. 20-3018(b), obtaining jurisdiction under K.S.A. 60-2101(b). We affirm the Court of Appeals' decision affirming

5

the district court's decision to vacate the CSB's first decision, and thus we ultimately uphold Denning's decision to terminate Maurer's employment.

DISCUSSION

Because the parties are familiar with the underlying facts and procedural history of this case and the Court of Appeals fully discussed both in *Denning*, 46 Kan. App. 2d 688, we will not repeat them here. Instead, we will proceed to consider the two issues presented in Maurer's petition for review: (1) whether the CSB exceeded the scope of its authority in rendering its first decision, and (2) whether the CSB's first decision was substantially supported by the evidence. To provide context for our analysis of these issues, we begin with a general overview of the roles of a county sheriff and a sheriff's civil service board and the relevant judicial review process.

*The Roles of the County Sheriff and a Sheriff's Civil Service Board*

K.S.A. 19-805(a) permits a county sheriff to "appoint, promote, demote and dismiss additional deputies and assistants necessary to carry out the duties of the office, for whose official acts the sheriff is responsible." But the sheriff's powers are not absolute. Instead, those powers are subject to some oversight by the board of county commissioners regarding personnel policies and procedures and pay plans and are subject to "any applicable bargaining agreements or civil service system." K.S.A. 19-805(d).

Counties designated as "urban area" counties and counties having certain populations are required by statute to establish a sheriff's civil service system. K.S.A. 19-4303 *et seq*. In these counties, the boards of county commissioners "shall, by resolution, create a civil service board." K.S.A. 19-4304. The duties of a sheriff's civil service board are outlined in K.S.A. 19-4311 and include the duty to "[c]onduct hearings and hear

6

complaints by or against personnel for the purpose of demotion, suspensions or removal of personnel." K.S.A. 19-4311(h).

Regarding the dismissal or suspension of any permanent employee covered under a sheriff's civil service system, K.S.A. 19-4327 provides, in relevant part:

"(a) The sheriff may dismiss any permanent employee when [the sheriff] considers that the good of the service will be served thereby, and for disciplinary purposes may suspend without pay a permanent classified employee for a period not to exceed thirty (30) days, but no permanent employee shall be dismissed for political, religious or racial reasons.

A permanent employee can seek review of his or her dismissal by requesting a hearing before the applicable sheriff's civil service board. K.S.A. 19-4327(b). A sheriff's civil service board is authorized to receive evidence at the hearing and to determine the "reasonableness" of the sheriff's personnel decision. See K.S.A. 19-4311(h); K.S.A. 19-4327(b), (d). Finally, a sheriff's civil service board is authorized to approve or disapprove the sheriff's action and may order reinstatement of a dismissed deputy with back pay, sustain the dismissal, or sustain the dismissal with certain conditions. K.S.A. 19-4327(d).

*Judicial Review of a Sheriff's Civil Service Board Decision*

A party aggrieved by a sheriff's civil service board decision may seek judicial review of that decision under K.S.A. 60-2101(d). See *Ratley v. Sheriff's Civil Service Board*, 7 Kan. App. 2d 638, 641, 646 P.2d 1133 (1982) (relying on *Thompson v. Amis*, 208 Kan. 658, 493 P.2d 1259, *cert. denied* 409 U.S. 847 [1972], to conclude that any appeal from a decision of a sheriff's civil service board must be taken exclusively under K.S.A. 60-2101[d] because a sheriff's civil service board acts as a quasi-judicial body); see also *Landau v. City Council of Overland Park*, 244 Kan. 257, 273, 767 P.2d 1290

7

(1989) (noting that municipal and county actions are specifically excluded from the Kansas Judicial Review Act, K.S.A. 77-601 *et seq.*). K.S.A. 60-2101(d) provides that "[a] judgment rendered or final order made by a political or taxing subdivision, or any agency thereof, exercising judicial or quasi-judicial functions may be reversed, vacated or modified by the district court on appeal." The appeal is docketed as "an action in the district court, which court shall then proceed to review the same, either with or without additional pleadings and evidence, and enter such order or judgment as justice shall require." K.S.A. 60-2101(d).

When an appeal is taken to the district court under K.S.A. 60-2101(d), the district court may not substitute its judgment for that of the political or taxing subdivision or agency, and the court's scope of review is limited to determining whether the challenged order was within the subdivision or agency's scope of authority; was substantially supported by the evidence; or was fraudulent, arbitrary, or capricious. *Robinson v. City of Wichita Employees Retirement Bd. of Trustees*, 291 Kan. 266, 270, 241 P.3d 15 (2010); *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 450, 436 P.2d 828 (1968).

As a matter of right, parties may appeal a district court's final decision to the Court of Appeals, and that court can review any ruling or order from the beginning of the proceeding. See K.S.A. 60-2101; K.S.A. 2013 Supp. 60-2102; see also *Olathe Hospital Foundation, Inc. v. Extendicare, Inc.*, 217 Kan. 546, Syl. ¶ 1, 539 P.2d 1 (1975) (concluding that after party properly appeals case originating from administrative agency to district court, further appeal is authorized under statutes dealing generally with appeals from district court).

When an appeal is made from a "political or taxing subdivision, or any agency thereof," an appellate court reviews the decision as though the appeal had been made directly to the appellate court, *i.e.*, no deference is accorded the district court's decision.

*Robinson*, 291 Kan. at 270. Consequently, an appellate court considers the administrative ruling anew, rather than reviewing the district court's decision, but may not substitute its judgment for that of the subdivision or agency and must limit its scope of review to determining whether the challenged order was within the subdivision or agency's scope of authority, was substantially supported by the evidence, or was fraudulent, arbitrary, or capricious.

Finally, a party aggrieved by a decision from the Court of Appeals can petition this court for review. See K.S.A. 20-3018(b); K.S.A. 60-2101(b). This final level of judicial review is discretionary and governed by our rules of appellate practice. K.S.A. 20-3018(b); Supreme Court Rule 8.03 (2013 Kan. Ct. R. Annot. 74). Unless limited by the order granting review, "the issues before the Supreme Court include all issues properly before the Court of Appeals which the petition for review or cross-petition allege were decided erroneously by the Court of Appeals." Supreme Court Rule 8.03(g)(1) (2013 Kan. Ct. R. Annot. 77).

With this background in mind, we turn to the two specific issues Maurer claims were erroneously decided by the Court of Appeals: (1) whether the CSB exceeded the scope of its authority in rendering its first decision and (2) whether the CSB's first decision was substantially supported by the evidence. And, while we limit our review to these two issues, because this remains an appeal from a decision rendered by a political subdivision or agency thereof, we are guided by the same scope of review exercised by the district court and the Court of Appeals as set out above.

Notably, even though this case reaches us through Maurer's petition for review, this multilayer judicial review process places the parties in the same positions as they were in the district court when Denning challenged the CSB's first decision ordering

9

Maurer's reinstatement, *i.e.*, Denning is on the offensive and Maurer is defending that decision.

*The CSB exceeded its scope of authority and rendered a decision not substantially supported by the evidence.*

Denning contends that in its first decision the CSB exceeded its scope of authority by reviewing his decision to terminate Maurer de novo and substituting its judgment for that of Denning. Relying on *Board of Lincoln County Comm'rs v. Nielander*, 275 Kan. 257, 62 P.3d 247 (2003), Denning argues the CSB lacks authority to review his personnel decisions. Alternatively, Denning argues that when K.S.A. 19-805 is read in conjunction with K.S.A. 19-4327, it is clear that the CSB's role is limited to determining whether an employee was dismissed for reasons of race, religion, or politics. Additionally, Denning contends the CSB's decision is not substantially supported by the evidence.

Maurer contends the CSB acted within its scope of authority when it rendered its first decision, reversing Denning's decision and ordering Maurer's reinstatement. He argues the plain language of K.S.A. 19-4327 authorizes the CSB to conduct a de novo hearing, determine the reasonableness of a sheriff's personnel decision, and, if appropriate, reverse the sheriff's decision and order the employee's reinstatement. Maurer further argues Denning misplaces reliance on *Nielander*, particularly in light of the Court of Appeals' rejection of the same or similar argument in *Zoellner v. Civil Service Bd. of Leavenworth County*, 39 Kan. App. 2d 693, 182 P.3d 1288 (2008). Finally, Maurer argues substantial evidence supports the CSB's decision.

*Standards of Review*

"Administrative agencies are creatures of statute and their power is dependent upon authorizing statutes, therefore any exercise of authority claimed by the agency must

10

come from within the statutes." *Pork Motel, Corp. v. Kansas Dept. of Health & Environment*, 234 Kan. 374, 378, 673 P.2d 1126 (1983). Consequently, to determine whether the CSB exceeded its scope of authority we must consider and interpret the CSB's authorizing statutes. Questions of statutory interpretation are subject to unlimited appellate review. *Redd v. Kansas Truck Center*, 291 Kan. 176, 187, 239 P.3d 66 (2010).

Similarly, whether the CSB's decision is substantially supported by the evidence is a question of law subject to de novo review. See, *e.g.*, *In re Petition of City of Shawnee for Annexation of Land*, 236 Kan. 1, 17, 687 P.2d 603 (1984) ("whether the Board's order is reasonable as supported by substantial competent evidence, is quintessentially a matter of law").

> *A sheriff's civil service board has authority to review and determine the reasonableness of a county sheriff's personnel decision.*

To determine a sheriff's civil service board's scope of authority we begin with its authorizing statutes. K.S.A. 19-4311(h) authorizes the board to "[c]onduct hearings and hear complaints by or against personnel for the purpose of demotion, suspensions or removal of personnel." In conjunction with these hearings, the board may compel the attendance of witnesses, take depositions, receive testimony, and seek contempt orders for witnesses who refuse to comply with subpoenas. K.S.A. 19-4311(i). K.S.A. 19-4327(b) and (d) further delineate the board's powers and duties to consider dismissals and conduct hearings:

> "(b) Any employee so dismissed or suspended may request in writing within thirty (30) days after receipt of such notification a hearing before the board to determine the reasonableness of such action and the board shall grant the employee a hearing within fifteen (15) days after receipt of such request.
> . . . .

11

"(d) After the hearing and consideration of the evidence for and against a dismissal, the board shall approve or disapprove such action and may make any one of the following appropriate orders: (1) Order the reinstatement of the employee and the payment to the employee of such salary as has been lost by reason of such dismissal. (2) Sustain the dismissal of such employee. (3) Except as provided above the board may sustain the dismissal, but may order the name of the dismissed employee returned to the appropriate registers, or may take steps to effect the transfer of such employee to a comparable position in another department."

K.S.A. 19-4327(b) and (d) plainly authorize the sheriff's civil service board to receive and consider evidence "for and against a dismissal" in determining the "reasonableness" of the sheriff's personnel decision to approve or disapprove of the sheriff's decision, and to make appropriate orders based on its findings and conclusions. But Denning asks us to look beyond the plain language of K.S.A. 19-4327 to conclude that the CSB either lacked authority to review his personnel decision or had only limited authority. For the reasons discussed below, we decline to do so.

### 1. Nielander *did not nullify the CSB's authority under K.S.A. 19-4327*.

In arguing the CSB lacks authority to review his personnel decisions, Denning relies on *Nielander*. There, a sheriff and deputy sheriff appealed an injunction allowing the board of county commissioners to terminate the deputy sheriff's employment. The sheriff and deputy sheriff argued the board lacked the constitutional or statutory authority to hire or fire the duly appointed assistant to an elected county official. Agreeing with the appellants, the *Nielander* court ultimately concluded: "[B]oards of county commissioners may establish personnel policies and procedures for all nonelected county personnel . . . [and] collective bargaining agreements or a civil service system," and "personnel actions taken by sheriffs are 'subject to' personnel policies . . . established by boards of county commissioners," but "K.S.A. 19-805(d) does not give county commissioners the ability to

supersede a sheriff's power to appoint, promote, demote, or dismiss his or her personnel." 275 Kan. at 266-67.

Denning would have us extend *Nielander*'s holding that a board of county commissioners lacks authority to override a sheriff's personnel decision appealed to a sheriff's civil service board. But as Maurer argues, Denning's reliance on *Nielander* is misplaced, both because it contradicts the plain language of K.S.A. 19-4327(d), as just discussed, and because we agree with the Court of Appeals' opinion in *Zoellner* rejecting this argument. See 39 Kan. App. 2d at 698-99 (explaining that *Nielander* "explicitly recognizes that K.S.A. 19-805(d) makes a sheriff's personnel decision subject to certain restrictions, including a civil service system," and that *Nielander* "does not address a civil service board's authority" because "[i]n *Nielander*, the Supreme Court was dealing with the authority of a board of county commissioners").

2. *A sheriff's civil service board's authority is not limited to determining whether a sheriff dismissed an employee for discriminatory reasons.*

To support Denning's position in this case that the CSB has only limited authority to review his personnel decisions, Denning relies upon K.S.A. K.S.A. 19-805 and 19-4327. Construing both statutes together, he argues, requires that we limit the CSB's role to consideration of "whether an officer was terminated for reasons of race, religion or politics."

As previously discussed, K.S.A. 19-805(a) authorizes a county sheriff to make decisions regarding the hiring and firing of sheriff's deputies, but that power is not absolute. Rather, "[a]ny personnel action taken by the sheriff . . . shall be subject to . . . any applicable . . . civil service system." K.S.A. 19-805(d).

13

In counties where a sheriff's civil service system has been established, a county sheriff "may dismiss any permanent employee when [the sheriff] considers that the good of the service will be served thereby . . . but no permanent employee shall be dismissed for political, religious or racial reasons." K.S.A. 19-4327(a). And a sheriff's decision to suspend or dismiss an employee is subject to review by the sheriff's civil service board, which is authorized to determine the "reasonableness" of the sheriff's decision. K.S.A. 19-4327(b), (d). Notably, the provisions of K.S.A. 19-4327 mirror those governing personnel decisions and review of those decisions under the state civil service system. See K.S.A. 2013 Supp. 75-2949(a) ("An appointing authority may dismiss . . . any permanent employee . . . when the appointing authority considers the good of the service will be served thereby. . . . No permanent employee . . . may be dismissed . . . for political, religious, racial or other non-merit reasons."); K.S.A. 2013 Supp. 75-2949(f) ("Any permanent employee finally dismissed, demoted or suspended, may request a hearing from the state civil service board to determine the reasonableness of such action.").

Denning argues that reading the provisions of K.S.A. 19-4327(a) and (b) together and in conjunction with K.S.A. 19-805(a) makes clear that reasonableness refers only to lawfulness—*i.e.*, the CSB's role is limited to determining whether the sheriff dismissed an employee for unlawful reasons such as race, religion, or politics.

But we cannot accept Denning's tortured synthesis of K.S.A. 19-4327(a) and (b). K.S.A. 19-4327(a) makes clear that it can *never* be for the "good of the service" to dismiss a permanent employee for political, religious, or racial reasons. See *Swezey v. State Department of Social & Rehabilitation Services of Kansas*, 1 Kan. App. 2d 94, 98-99, 562 P.2d 117 (1977) (construing phrase "for the good of the service" in K.S.A. 75-2949 to mean that appointing authority's dismissal of permanent classified employee must be for legal cause); see also *Wright v. Kansas Water Office*, 255 Kan. 990, 996-97,

14

881 P.2d 567 (1994) (discussing nature of Kansas Civil Service Act and *Swezey*'s interpretation of K.S.A. 75-2949 as requiring "that a valid cause be present to justify termination of a civil service employee"). Thus, it would be nonsensical to read K.S.A. 19-4327(b) to limit the CSB to considering the reasonableness of the sheriff's decision when that decision is based upon a discriminatory purpose. Such a decision is unlawful and, thus, per se unreasonable. Further, Denning fails to point to any appellate cases limiting the state civil service board's role to determining whether an appointing authority based its personnel decision on discriminatory reasons.

For these reasons, we reject Denning's argument that K.S.A. 19-4327(a) and (b) limit a sheriff's civil service board's review to considering whether a sheriff dismissed a permanent employee for racial, religious, or political reasons.

In sum, we agree with Maurer that in this case the plain language of K.S.A. 19-4327(b) and (d) authorizes the CSB to receive and consider evidence for and against a dismissal in determining the reasonableness of the sheriff's personnel decision, to approve or disapprove of the sheriff's decision, and to make appropriate orders based on its findings and conclusions. In light of this plain language, we reject Denning's argument that the CSB either had no authority, or had only limited authority, to review his personnel decision.

> *The CSB exceeded its scope of authority in this case because it failed to understand or apply the reasonableness standard, and its failure to understand that standard is demonstrated by the lack of evidentiary support for its own decision.*

Having concluded the CSB had authority to review and determine the reasonableness of Denning's decision, we next consider whether it properly applied that standard in this case.

15

When the CSB conducts a hearing requested by a dismissed employee, it performs a "quasi-judicial" function, essentially sitting as an appeals board, and its role is to determine the reasonableness of the sheriff's personnel decision. K.S.A. 19-4327(b); see also *Ratley*, 7 Kan. App. 2d at 641-42 (recognizing sheriff's civil service board performs a quasi-judicial function and noting "ultimate issue" before board is reasonableness of sheriff's decision).

Generally, a decision is reasonable if it is substantially supported by the evidence. See, *e.g.*, *In re Petition of City of Shawnee for Annexation of Land*, 236 Kan. at 17 ("whether the Board's order is reasonable as supported by substantial competent evidence, is quintessentially a matter of law"); *Central Kansas Power Co. v. State Corporation Commission*, 221 Kan. 505, 511, 561 P.2d 779 (1977) (holding that order of Kansas Corporation Commission "is generally considered reasonable when based upon substantial competent evidence"); *Neeley v. Board of Trustees, Policemen's & Firemen's Retirement System*, 212 Kan. 137, 144, 510 P.2d 160 (1973) (suggesting administrative tribunal's order is unreasonable when there is no basis in record to support it); see also 3 Koch, Administrative Law and Practice § 9.24[1], p. 336 (3d ed. West 2010) ("the most useful and universal understanding of the substantial evidence standard is reasonableness").

Accordingly, the CSB's role here was to consider whether substantial competent evidence supported Denning's decision dismissing Maurer. See K.S.A. 19-4327(b); *Central Kansas Power Co.*, 221 Kan. at 511. "'Substantial competent evidence possesses both relevance and substance and provides a substantial basis of fact from which the issues can be reasonably determined.' [Citations omitted.]" *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 648, 294 P.3d 287 (2013). "Evidence is not substantial if

16

it is overwhelmed by other evidence in the record or constitutes a mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Here, the CSB failed to fulfill that role, thereby exceeding its scope of authority, by failing to understand the evidentiary footings of the reasonableness standard, as demonstrated by its decision. In its written order, the CSB made several factual findings, all of which are supported by evidence in the record and are either uncontroverted or procedural facts. But, in the "findings and conclusions" section of the order, the CSB indicated it

> "reviewed every document introduced [and] considered the testimony of all of the witnesses and the legal arguments advanced by both parties in person and in writing. After a thorough review and consideration of the evidence, the CSB, on a 3 to 1 vote, hereby reverses the decision of the Sheriff and the Board of Inquiry. The [CSB] finds that there was no evidence to support the finding that a violation of [the department's policy on truthfulness] occurred. [The] CSB specifically finds and concludes that the two reports were, by all accounts, truthful. See testimony of Sergeant Greenwood beginning on page 68 of the CSB Transcript. In response to questions from counsel, Greenwood concedes that the reports were truthful, the only issue was that he was 'not as specific as [he] or Lieutenant Pinkelman wanted him to be.' CSB Transcript, p. 71. The mere fact that the first report was not as complete as desired does not rise to a violation of [the department's policy on truthfulness]. Mr. Maurer at all times took responsibility. His only error was to fail to include in the first report that the item he tossed at the horsefly was a blue folder. Further, his immediate supervisor, Sergeant Greg Shelton, believes Maurer does a good job; shows up for work; knows and does what needs to be done and is reliable and truthful. He would like to have him back as an officer."

As the *Denning* majority noted, "the words 'reasonable' or 'reasonableness' do not appear in either the oral or written CSB decisions." 46 Kan. App. 2d at 698. Nor it is implicit from the CSB's written order that the CSB found Denning's decision

17

unreasonable. Instead, it is clear from the CSB's decision that it reversed Denning's decision because it found: (1) "no evidence to support the finding that a violation of [the department's policy on truthfulness] occurred," (2) "the two reports were, by all accounts, truthful" even if somewhat incomplete, (3) "Maurer at all times took responsibility," and (4) Sergeant Greg Shelton believed Maurer did a good job and would have liked to have Maurer back as an officer.

Viewing the record as a whole, we agree with the district court that the CSB exceeded its scope of authority by substituting its judgment for that of Denning, rather than applying the requisite reasonableness standard, because the CSB's determination that no evidence existed to support Denning's decision "was itself unreasonable, . . . arbitrary and capricious, and not supported by the uncontroverted facts of the case."

First, as Denning argues and as both the district court and the *Denning* majority concluded, the CSB's conclusion that there was "no evidence" to support Denning's finding that Maurer violated the department's truthfulness policy ignores evidence directly supporting Denning's dismissal of Maurer. See 46 Kan. App. 2d at 697-704. Namely, the record demonstrates that when Maurer left the keys to the vehicle with Greenwood, he also left a sticky note stating simply, "Crack in windshield—rock." Further, Greenwood testified that when he spoke with Maurer about the note the next morning Maurer advised him that "the windshield had spiderwebbed as the result of a rock chip." In neither account did Maurer mention that he hit the windshield with a binder. Thus, this evidence supported Denning's determination that Maurer violated the policy on truthfulness when he initially reported to Greenwood—on a sticky note and in his first conversation with Greenwood about that note—that only a rock damaged the windshield.

18

Similarly, the CSB's finding that Maurer's two written reports were "truthful" fails to take into account the full basis for Denning's decision. Specifically, Maurer was

> "accused of . . . making false statements in the note that he left with the keys for Sgt. Greenwood and in his verbal statement to Sgt. Greenwood on the morning of July 27. He [was] also accused of . . . failing to disclose relevant information in his verbal report to Sgt. Greenwood that same morning." (Emphasis added.)

The CSB did not act reasonably when it failed to consider the primary basis for Denning's decision—*i.e.*, Maurer's two false statements to Greenwood before he ever responded in written reports as well as his failure to disclose relevant information in those initial reports. As the *Denning* majority aptly recognized: "Half truths are untruths if they infer a conclusion different from what would have been concluded had the whole truth been told." 46 Kan. App. 2d at 701.

Third, as discussed by the district court and the *Denning* majority, the record contains substantial evidence undermining the CSB's conclusion that "Maurer at all times took responsibility." See 46 Kan. App. 2d at 698-99. In reaching this conclusion, it appears the CSB once again was referring only to the written reports, and yet it was Maurer's failure to take responsibility with respect to his initial actions that, in great part, led to his termination. Moreover, as the *Denning* majority suggested, Maurer's reports actually were calculated to shift responsibility from him rather than accept responsibility. 46 Kan. App. 2d at 699. That suggestion is borne out by the record.

For example, Captain William Rector interviewed Maurer as part of the internal investigation of the incident. In his interview, Maurer stated that he did not fully disclose his role in damaging the windshield "up front" because he did not "feel like [he] was fully responsible." When asked directly why he decided to write "rock" on the sticky note,

19

Maurer explained, "Well, it was just a small posty note, I didn't have a whole lotta room to write anything on there and that was—." Later, when Rector asked why Maurer did not clarify the "rock" statement with Sergeant Greenwood the next morning, Maurer stated, "I don't feel like I was the sole reason why this windshield cracked so naturally I didn't wanna jump up and down and claim full responsibility because there were other factors into [*sic*] this," and "maybe I didn't feel comfortable wanting to accept full responsibility . . . ."

Finally, even though Sergeant Shelton testified Maurer did "a good job," and that he would "take [Maurer] back" as an officer, Shelton's testimony does not rebut the substantial evidence discussed above supporting Denning's determination that Maurer violated department policy and his ultimate decision to terminate Maurer.

CONCLUSION

In sum, we conclude the CSB exceeded its scope of authority because the CSB's written order clearly demonstrates the CSB failed to understand and apply the reasonableness standard in reviewing Denning's decision. Further, because the CSB's decision was not substantially supported by the evidence, the CSB's decision was itself unreasonable, arbitrary, and capricious. Accordingly, we affirm the Court of Appeals' decision affirming the district court's decision to vacate the CSB's decision.

Affirmed.

* * *

JOHNSON, J., dissenting: I agree with Judge Leben's dissent in the Court of Appeals' opinion in this case: "The civil-service board concluded that firing Maurer

20

wasn't reasonable, and we are not allowed to substitute our judgment for that of the administrative agency charged by statute with making such a decision." *Denning v. Johnson County Sheriff's Civil Service Board*, 46 Kan. App. 2d 688, 710, 266 P.3d 557 (2011) (Leben, J., dissenting). No matter how the majority tries to spin what it is doing, the bottom line is simply a reversal of a decision that the majority does not like. That is not our function, and I would not do it.