NOT DESIGNATED FOR PUBLICATION

No. 120,908

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MICHAEL ERNATT,
*Appellee/Cross-appellant*,

v.

CITY OF WICHITA,
*Appellant/Cross-appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Opinion filed November 13, 2020. Affirmed.

*Jan Jarman*, assistant city attorney, for appellant/cross-appellee.

*Amy S. Lemley*, of Foulston Siefkin LLP, of Wichita, for appellee/cross-appellant.

Before BRUNS, P.J., WARNER, J., and BURGESS, S.J.

PER CURIAM: After Michael Ernatt's dog allegedly bit his next-door neighbor, an officer with the Animal Control Section of the City of Wichita Police Department deemed the dog "potentially dangerous" under Wichita City Code of Ordinances Sec. 6.04.045(a) (2018). Ernatt appealed to an administrative hearing officer, who also concluded that Ernatt's dog was potentially dangerous. There was no transcript taken of this hearing. Ernatt then appealed to the district court under K.S.A. 60-2101(d). Besides challenging the hearing officer's potentially dangerous dog finding, Ernatt raised several constitutional challenges to Wichita's dangerous dog ordinance scheme. The district court did not rule on Ernatt's constitutional arguments but reversed, finding the lack of a transcript prevented the court from meaningfully reviewing the potentially dangerous dog

1

ruling. The City of Wichita (the City) appeals, arguing that the district court misunderstood its review powers under K.S.A. 60-2101(d). Ernatt cross-appeals, raising some of the constitutional challenges to the ordinance scheme he raised below. We affirm the district court's ruling.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2018, Ernatt's next-door neighbor was allegedly bitten by Ernatt's dog while mowing her lawn. The neighbor's mother emailed a complaint to the Animal Control Section of the Wichita Police Department. Ernatt received a citation from animal control informing him that his dog had allegedly bitten another human and requesting him to bring his dog to the Wichita Animal Shelter to be temporarily quarantined. Ernatt complied with the citation the following morning, and his dog was impounded. He then received a letter from the police department informing him that based on the incident with his neighbor, an animal control officer deemed his dog "potentially dangerous" under Wichita City Code Sec. 6.04.045(a). The letter set out several conditions that Ernatt had to comply with before his dog would be returned to him. Ernatt complied, and his dog was returned to him. The letter also informed Ernatt that he could appeal the officer's determination to the municipal court and that failure to comply with the conditions of the officer's finding would result in criminal charges being filed against him.

Ernatt appealed to the municipal court. The municipal court judge, acting as an administrative hearing officer, held an administrative hearing to determine whether "substantial competent evidence" supported animal control's finding that Ernatt's dog was potentially dangerous. There was no transcript taken of this hearing; the only record of what took place at the hearing is the brief summary in the municipal court's ruling.

2

According to the written ruling, the alleged victim testified that Ernatt's dog had dug underneath Ernatt's fence and bit her toe causing her toe to bleed while she was mowing her lawn. An officer with animal control stated that he responded to the scene several days after the incident and interviewed the victim and her mother. He did not observe an injury on the victim's toe but did see gaps underneath Ernatt's fence. Two witnesses, testifying in Ernatt's defense, stated they had observed the dog in training and social settings and said the dog had never shown aggressive behavior. Ernatt said while his dog was not aggressive to humans, the dog had dug underneath his fence on previous occasions. Photos of what were alleged to be a dog bite and Ernatt's fence were admitted into evidence. Beyond brief summary descriptions, the written ruling did not include detail regarding the testimony or evidence presented or record any objections made by either party.

The hearing officer weighed the factors under Wichita City Code Sec. 6.04.045(a) and concluded that there was "sufficient evidence to deem" Ernatt's dog potentially dangerous. The hearing officer's written ruling informed Ernatt that he could appeal the determination to the district court.

Ernatt appealed to the Sedgwick County District Court pursuant to Wichita City Code Sec. 6.04.210(d) and K.S.A. 60-2101(d). Ernatt challenged the hearing officer's finding that his dog was potentially dangerous. He raised several constitutional arguments, including claims that his procedural due process rights were violated and that Wichita's dangerous dog ordinance scheme was unconstitutionally vague and overbroad. He submitted the hearing officer's written ruling to the district court as well as the photos admitted into evidence at the administrative hearing.

Both parties filed motions in the district court disputing how the lack of transcript impacted the district court's standard of review. Ernatt claimed that the lack of transcript required the district court to hear all his arguments, constitutional and otherwise, through

a de novo trial. The City argued that once the district court resolved Ernatt's constitutional arguments, his remaining claim challenging the hearing officer's potentially dangerous dog finding was subject to the Wichita Code's and K.S.A. 60-2101(d)'s limited review standard. According to the City, the lack of transcript did not impede the district court's review of the hearing officer's finding because it had the authority to conduct a hearing where the parties could recreate the evidence presented below.

In January 2019, the district court heard arguments from both parties on the merits of Ernatt's constitutional claims as well as the district court's appropriate standard of review. At the hearing, the district court expressed its understanding of its limited review powers, noting:

> "[I]n this circumstance the initial tribunal isn't required to make a record, and there is no way for me at this point to determine, as the ordinance requires, whether the municipal judge's decision is supported by substantial evidence and that the administrative order was neither arbitrary nor capricious if there's no administrative record. It seems to me very clear from this ordinance that I'm supposed to be sitting as a court of error and review. I'm not—this is—it's clear to me that this is set up that it's not a trial de novo."

In response, the City reiterated that the district court could hold a hearing on the nature of the evidence presented below or review the hearing officer's findings solely from his written ruling. The district judge replied that if he heard additional evidence, he would not be following the procedure outlined in the Wichita Code and would be "doing the whole trial."

After the hearing, the district court took the parties' arguments under advisement. Later that month, the district court called the parties into chambers to informally discuss the case and issued a minute order reversing the hearing officer's potentially dangerous dog finding. The district court's order stated:  "The Court finds that review of the City's determination is not possible because of the lack of an administrative record.

4

Accordingly, Judgment is for [Ernatt]. Parties to confer regard[ing] costs to be recovered by [Ernatt]—any dispute as to costs court reserves jurisdiction." The district court later ordered the City to pay some of Ernatt's court costs.

In February 2019, the City appealed the district court's minute order reversing the hearing officer. Ernatt then cross-appealed, raising some of the same constitutional arguments he raised below.

ANALYSIS

I. *The district court did not err when it reversed the administrative hearing officer's potentially dangerous dog finding based on a lack of transcript.*

On appeal, the City argues that the district court misunderstood its review powers under K.S.A. 60-2101(d) when it ruled in Ernatt's favor based on the lack of an administrative hearing transcript.

To resolve the City's argument, we must determine whether the district court properly interpreted and applied K.S.A. 60-2101(d). The interpretation of a statute is a question of law over which this court has unlimited review. *In re Tax Appeal of BHCMC*, 307 Kan. 154, 161, 408 P.3d 103 (2017). To the extent that the City's argument also requires interpretation of the Wichita City Code, this court's review is also unlimited. *Robinson v. City of Wichita Employees' Retirement Bd. of Trustees*, 291 Kan. 266, 272, 241 P.3d 15 (2010) (interpretation of municipal ordinances involves same rules as interpretation of statutes).

Wichita City Code Sec. 6.04.210 sets out the appeal procedure from an animal control officer's determination that a dog is dangerous or potentially dangerous. The dog owner may appeal the control officer's determination to a municipal court, which acts as

5

an administrative hearing officer. Wichita City Code Sec. 6.04.210(b). On appeal, the hearing officer is tasked with determining whether substantial competent evidence supports a finding that the dog is dangerous or potentially dangerous based on the factors listed in Wichita City Code Sec. 6.04.045(a). Wichita City Code Sec. 6.04.210(b). The hearing officer may hear testimony from "the owner of the dog, animal trainers who have directly and personally evaluated the dog, Animal Services Officers or staff of Animal Services, victims of any bite or attack, witnesses to the dog's behavior, neighbors or other affected persons, and veterinarians concerning the vicious propensity of the dog." Wichita City Code Sec. 6.04.210(b).

If the hearing officer finds the dog dangerous or potentially dangerous, the dog owner may appeal to a Sedgwick County District Court. Wichita City Code Sec. 6.04.210(d). Wichita City Code Sec. 6.04.210(d) provides: "The District Court will review the case to determine if the [hearing officer's] decision was supported by substantial evidence and that the administrative order was neither arbitrary nor capricious in accordance with K.S.A. 60-2101."

Kansas district courts only have such jurisdiction as the Legislature provides. Kan. Const. art. 3, § 6; see *In re Marriage of Crane*, 36 Kan. App. 2d 677, 681, 143 P.3d 87 (2006). Wichita City Code Sec. 6.04.210(d) directs a district court to review the hearing officer's finding to determine whether it "was supported by substantial evidence and . . . was neither arbitrary nor capricious in accordance with K.S.A. 60-2101." K.S.A. 60-2101(d) authorizes district courts to review appeals from orders or judgments made by a political subdivision—here, the City of Wichita—exercising judicial or quasi-judicial functions. See *Stueckemann v. City of Basehor*, 301 Kan. 718, 747, 348 P.3d 526 (2015).

The Kansas Supreme Court has described the parameters of a district court's review of a political subdivision's judgment or order under K.S.A. 60-2101(d):

"When an appeal is taken to the district court under K.S.A. 60-2101(d), the district court may not substitute its judgment for that of the political or taxing subdivision or agency, and the court's scope of review is limited to determining whether the challenged order was within the subdivision or agency's scope of authority; was substantially supported by the evidence; or was fraudulent, arbitrary, or capricious." *Denning v. Johnson County Sheriff's Civil Service Bd.*, 299 Kan. 1070, 1075, 329 P.3d 440 (2014).

A district court's review under K.S.A. 60-2101(d) is restricted to this three-part standard and is not de novo. *Butler v. U.S.D. No. 440*, 244 Kan. 458, 463, 769 P.2d 651 (1989); *Denning v. Johnson County Sheriff's Civil Service Bd.*, 46 Kan. App. 2d 688, 703, 266 P.3d 557 (2011), *aff'd* 299 Kan. 1070, 329 P.3d 440 (2014). This limited standard of review was first explained in *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 450, 436 P.2d 828 (1968), and now governs appeals arising under K.S.A. 60-2101(d). See *In re Residency Application of Bybee*, 236 Kan. 443, 444, 691 P.2d 37 (1984). And these review powers are consistent with Wichita City Code Sec. 6.04.210(d), which limits the district court's review to whether the initial finding was supported by substantial evidence and whether the municipal court's order was arbitrary or capricious. The aggrieved party has the burden to show under this standard that the political subdivision's decision should be reversed or declared void. See *Stueckemann*, 301 Kan. at 750.

Parties have a right to appeal a district court's final decision to this court, and this court can review any ruling or order from the start of the proceeding. See K.S.A. 60-2101(a); K.S.A. 2019 Supp. 60-2102(a). Generally, this court's review on appeal is the same as the district court's; in other words, this court reviews the political subdivision's decision as though the appeal had been directly made to this court. *Denning*, 299 Kan. at 1075.

In this case, the City is not claiming the district court's decision in Ernatt's favor was wrong per se. The City's argument on appeal raises the narrow issue of whether the

7

district court misunderstood its review powers under K.S.A. 60-2101(d) when it held that it had no option but to reverse the hearing officer's determination based the lack of transcript from the administrative hearing.

Considering the myriad cases entering the court system, it would seem that a case of this magnitude could be readily resolved without extensive complications. This is not the situation we find ourselves in. The extensive arguments, including constitutional challenges, arising in this case are due in large part to the City ordinances that complicate nearly every facet of this case starting with the initial investigation and culminating in this appeal.

While the investigation into the alleged dog bite is not the focus of this appeal, the ordinance authorizing the investigation and the process utilized serves as an indicator of what followed.

The City ordinance allows a police officer acting as an Animal Services agent to make an ex parte determination that a dog is dangerous or potentially dangerous based on the "facts available." If such a finding is made, the officer has wide discretion to order the dog's owner to take such steps as the officer deems necessary for public safety in addition to certain mandatory orders. The ultimate action authorized by the ordinances is the euthanization of the dog.

In this case, the investigation consisted of speaking to the neighbor and the neighbor's mother and observing several gaps between the bottom of the fence and the ground. However, the particular gap the dog allegedly came through was never determined. The officer never spoke with the dog's owner, did not observe any injury from the alleged bite, made no effort to identify the dog that allegedly bit the neighbor from the several dogs in the yard, and made no effort to determine if any of the dogs in the yard fit through any of the gaps in the fence. When the dog owner asked for

8

information from the officer, it was refused although the requested information was eventually used at a hearing. Clearly the determination of a potentially dangerous dog made by the officer was made on less than all the "facts available." From this point forward, Ernatt faced the challenge of reversing the determination made by the officer at every step of the proceedings with the ordinances in question making it difficult to meet that challenge.

The next sticking point arises from the appeal of the potentially dangerous dog determination to the municipal court. The municipal judge, acting as a hearing officer, is not empowered to conduct a de novo proceeding. Rather, the Wichita Code requires that the municipal court apply a substantial competent evidence standard to the facts determined by the investigating officer. See Wichita City Code Sec. 6.04.210(b).

At the hearing in the municipal court, Ernatt attempted to raise affirmative defenses and constitutional challenges to the validity of the ordinances. The City argued the ordinances did not allow affirmative defenses, and there is no record of the court's ruling on these matters. There were objections made to some of the witnesses Ernatt offered who were not allowed to testify. Again, there is no record of the court's rulings. After the court sustained the finding of a potentially dangerous dog, Ernatt appealed to the district court.

It is quite clear the district court wrestled with what steps the City ordinances required the district court to take, what it was permitted to take, or otherwise what options were available to the district court. The issues facing the district court were exacerbated by the lack of any meaningful record. There was no transcript from the municipal court, but the district court was prohibited from proceeding de novo making it impossible for the district court to fill in the sparse record before it.

The City argues that K.S.A. 60-2101(d) allows the district court to hear evidence. But the evidence the district court is permitted to hear is quite limited. One of the few Kansas appellate court decisions discussing K.S.A. 60-2101(d)'s allowance for additional evidence is *Davenport Pasture, LP v. Board of Morris County Comm'rs*, 31 Kan. App. 2d 217, 62 P.3d 699 (2003). There, this court found that the district court had exceeded the scope of its authority under K.S.A. 60-2101(d) by receiving evidence and by making an independent judgment on the merits of issues not addressed by a board of county commissioners. 31 Kan. App. 2d at 225. But the *Davenport* court recognized that K.S.A. 60-2101(d) allows a district court to hear additional evidence relevant to its three-part standard of review:

> "Although K.S.A. 60-2101(d) provides a district court with the ability to hear additional evidence, the Kansas Supreme Court has held that this review is not de novo. Rather, it is limited to the three issues listed above: whether the Board's decision was within the scope of its authority, whether it was supported by substantial competent evidence, and whether it was fraudulent, arbitrary, or capricious." 31 Kan. App. 2d at 225.

In effect, K.S.A. 60-2101(d) gives a district court discretion to hold an evidentiary hearing where the parties can recreate the evidence presented before the political subdivision. But a district court's authority to receive and consider such evidence must not be employed to broaden its limited scope of review. The evidence must be relevant to whether the political subdivision's decision was within the scope of its authority, was supported by substantial competent evidence, or was arbitrary or capricious. In doing this review, a district court is not substituting its judgment for that of the political subdivision. The hearing before the district court is not the equivalent of the hearing before the political subdivision. Without a trial de novo, the district court is not in a position to weigh the evidence and exercise its independent judgement. And without a record of the proceeding appealed, the district court cannot determine whether substantial evidence supported the hearing officer's findings.

10

The City argues that the district court had a sufficient record for review based on the ruling of the municipal court. It also argues that the district court could have asked the parties to come to a stipulation as to the pertinent facts. The City further argues that the district court could have remanded the case to the municipal court based on caselaw while the statute says that the district court can only reverse, vacate, or modify the City's determination. As this discussion demonstrates, the options available to the district court in reviewing a determination made by a municipal court in such a case as this are muddled at best. While the City claims that the district court had options available to it, the district court is not *required* to take any of the steps suggested by the City to improve the quality of the record submitted by the parties.

From the inception of the case with the investigation all the way through the appeal to the district court, there is a lack of clarity and structure in the ordinances that seemingly make it difficult for a dog owner to challenge an initial finding made on meager evidence. The process established by the ordinances does not create or permit the creation of a record of any substance with which a dog owner can challenge the initial potentially dangerous dog determination or which the district court can meaningfully review. Without a better record, the district court's hands in the present case were essentially tied. It was up to the discretion of district court to determine whether the record was sufficient to support the officer's and municipal judge's findings. The court concluded it was not, and there is nothing to show that the district court abused that discretion. We affirm the district court.

II. *This court need not address whether Wichita's dangerous dog ordinance scheme is unconstitutionally vague and overbroad.*

In his cross-appeal, Ernatt invites this court to address the merits of some the facial constitutional arguments he raised before the district court. He claims Wichita's

11

dangerous dog ordinance scheme is unconstitutionally vague and overbroad. The district court ruled in Ernatt's favor without addressing the merits of these issues. Citing K.S.A. 2019 Supp. 60-2103(h), the City reasons that because Ernatt's constitutional arguments are not predicated on an adverse ruling, they are the improper subject of a cross-appeal. K.S.A. 2019 Supp. 60-2103(h) limits cross-appeals to "rulings and decisions of which such appellee complains." Ordinarily, parties cannot cross-appeal from judgments unless they have been aggrieved by them. See *Morgan v. State*, No. 109,099, 2014 WL 5609935, at *3 (Kan. App. 2014) (unpublished opinion) (dismissing State's cross-appeal challenging district court's reasoning but not its result). This general rule is just as applicable to parties raising constitutional issues as it is in others. See *In re Interest of Waterman*, 212 Kan. 826, 834, 512 P.2d 466 (1973). Without an adverse ruling, we decline to address Ernatt's constitutional arguments.

Affirmed.