NOT DESIGNATED FOR PUBLICATION

No. 124,455

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KHOSROW SADEGHIAN and KAMY REAL ESTATE TRUST,
*Appellants*,

v.

CITY OF NORTON,
*Appellee*.

MEMORANDUM OPINION

Appeal from Norton District Court; PRESTON PRATT, judge. Opinion filed August 19, 2022. Affirmed.

*Charles A. Peckham*, of Brown, Creighton & Peckham, of Atwood, for appellants.

*Karen L. Griffiths*, of Sebelius & Griffiths, LLP, of Norton, for appellee.

Before GARDNER, P.J., HILL and ISHERWOOD, JJ.

PER CURIAM: Owners of a fire damaged duplex were ordered by the City of Norton to demolish their duplex "down to the concrete slab." Objecting to the complete demolition of their duplex, the owners sought judicial review. Denied relief by the district court, the owners appeal, claiming the City acted arbitrarily and capriciously and exceeded its authority. Claiming late notice, they also allege due process violations by the City and the district court. Because the structure, ruined by fire, was dangerous, the City acted within its authority and was not arbitrary or capricious in ordering its complete

demolition. Our review of the record disclosed no due process violations by either the City or the district court. We affirm.

*The City takes action on a dangerous structure.*

Khosrow Sadeghian and Kamy Real Estate Trust own a duplex in Norton that was damaged in a fire on July 9, 2020. In December 2020 the City code inspector, Jerry Wolf, sent the property owners a notice and order of dangerous building. The document laid out the damage to the duplex and instructed the owners that they must begin either repairs or demolition of the duplex within 30 days. It also said the owners may appeal the notice and order to the Norton City Council within 30 days from the date of service of the notice and order.

The property owners applied for and received a permit to demolish the duplex in January 2021. The permit was valid for 30 days. By March 2021 the duplex was still not repaired or demolished. Wolf wrote the mayor and city council and requested that the City proceed with a resolution finding that the property owners must complete the demolition and set the issue for a hearing.

The city council hearing was scheduled for May 5, 2021. The owners were sent notice of the hearing and it was published in the local newspaper. The hearing was held before the governing body of the City of Norton on May 5. The city code enforcement officer presented evidence about the damage to the duplex:

- it was dangerous, unsafe, and unfit for human use;
- extensive fire damage had destroyed the walls, carport, and roof;
- the roof had been partially taken down; and
- wiring, plumbing, and HVAC were destroyed by heat and smoke.

Building code inspector Wolf displayed pictures of the damaged duplex. Wolf's report explained that there was evidence of issues with the duplex before the fire, specifically: dry rot, missing shingles, and dilapidated siding and paint. He explained that the biggest issue was char and soot damage—a health hazard. Wolf contended that the structure needed to be replaced in its entirety, but it would not collapse.

Hildorf Truginm and Brenda Arnold appeared at the hearing as agents of the owners. Truginm said they started demolishing the duplex two weeks prior and planned to take the duplex down to its concrete bones and restore it. Wolf stated that the structure could be restored if the property owners had the money to do it. Truginm said he believed it could be taken down to the concrete bones within the next 30 days. He said the property owners had already removed some debris. Truginm and Arnold agreed that they let the 30-day limit pass on their demolition permit without starting work and had not applied for a permit extension.

The Norton city attorney expressed concern that the property owners had a history of not following through with repairs in Norton and Eastern Kansas. But she did not present evidence on this point. The governing body then voted to adopt Resolution 10-2021, finding the structure to be unsafe, dangerous, and unfit and should be demolished in the next 30 days.

In the resolution, the City ordered the owners to demolish the duplex down to the cement slab and remove the structure from the property within 30 days of May 5, 2021. It said that if they failed to meet that time frame, the structure would be demolished and removed. The resolution also provided that they could petition Norton County District Court for an injunction within 30 days. A copy of the resolution was not delivered to the property owners until June 1, 2021.

*The owners seek relief in the district court.*

The owners sought a district court injunction. In August 2021 the district court denied their appeal. The court's order depended solely on the record of the proceedings before the city council. The court held that if it were to receive additional evidence, it was limited to recreating the evidence presented to the City. The court found that other evidence was unnecessary because the owners filed copies of the pertinent proceedings.

The court noted that its scope of review was limited to determining whether the City's order: (1) was within the scope of the City's authority; (2) was substantially supported by the evidence; and (3) was fraudulent, arbitrary, or capricious.

The district court found that the City acted within its legal authority on unsafe structures under K.S.A. 12-1750. It found that the City's decision to demolish the duplex was substantially supported by the evidence. The court also held that the City's decision to demolish the duplex was not arbitrary and capricious considering the disrepair of the property before the fire and the lack of progress to clean up the property in the 10 months after the fire.

The property owners appeal, making two arguments:

(1) The city council acted arbitrarily or capriciously in ordering the demolition of the duplex, its decision was not substantially supported by the evidence, and it acted outside the scope of its authority; and (2) they were deprived of due process of law in both the city council hearing and the district court appeal.

*We are in the same position as the district court.*

Our statute, K.S.A. 60-2101(d), permits an appeal to the district court from any "judgment rendered or final order made by a political or taxing subdivision, or any agency thereof, exercising judicial or quasi-judicial functions." Thus, the district court had the authority to review the City's actions here.

That review, though, is limited by law. Judicial review of judicial or quasi-judicial functions is confined to three determinations: (1) whether the government body acted within the scope of its authority; (2) whether the decision was substantially supported by the evidence; and (3) whether the decision was fraudulent, arbitrary, or capricious. *Friends of Bethany Place v. City of Topeka*, 297 Kan. 1112, 1129, 307 P.3d 1255 (2013).

After that, when we review on appeal the holdings of a district court on cases such as this, we apply this standard as though the decision had been appealed directly to the appellate court. *Robinson v. City of Wichita Employees' Retirement Bd. of Trustees*, 291 Kan. 266, 270, 241 P.3d 15 (2010). Thus, we will analyze this record as if the matter was appealed directly to us.

*Did the City exceed its authority?*

We have no doubt that the City had the authority to order the demolition of a dangerous structure within its city limits according to K.S.A. 12-1753. The heart of the statute provides directions for a city dealing with dangerous structures:

> "Such resolution shall be published once in the official city paper and a copy mailed to
> the owners, agents, lienholders of record and occupants in the same manner provided for
> the notice of hearing. The resolution shall fix a reasonable time within which the repair or
> removal of such structure shall be commenced and a statement that if the owner of such

5

structure fails to commence the repair or removal of such structure within the time stated or fails to diligently prosecute the same until the work is completed, the governing body will cause the structure to be repaired or razed and removed in the case of unsafe or dangerous structures or rehabilitated in the case of abandoned property." K.S.A. 12-1753.

The record reveals that is essentially what happened here. The City resolved that a dangerous structure had to be removed within 30 days. We will not substitute our judgment for that of a city government who is required by law to consider the safety of all the people within the city limits. The City has the discretion to determine how long a dangerous structure should remain.

But the owners argue there is no grant of authority in that statute or in Norton City Code 4-407 (2020) to require that all the work be done *within a specific time*. Thus, the City exceeded its authority to require the work to be done within 30 days.

We cannot agree. We note that the district court found that the City was acting within the scope of its authority under K.S.A. 12-1753. The law also directs that if the owners fail to diligently prosecute the demolition until it is completed, the city can step in and remove the dangerous structure. The longer that a dangerous structure is allowed to exist, the greater is the danger that someone could be hurt or killed by that structure. The statute speaks of diligence in the removal of unsafe structures and a 30-day completion period does not appear to be unreasonable under these facts.

The statute does not prevent the City from setting a completion date. After all, we are dealing with dangerous structures and a City must be able to enforce its safety rules. We cannot hold that the City exceeded its authority by setting such a limit.

6

*Were the City's actions arbitrary or capricious?*

The owners' argument is essentially the same here. They contend that the City has shown no good reason for ordering the demolition to be completed within 30 days of May 5. There is substantially more work to do than taking the structure down to concrete walls. They admit that their agent said the structure could be taken down to the concrete walls in 30 days, but they argue there is no testimony that removing the concrete walls and taking the structure down to its foundation could reasonably be done in 30 days. The owners submit that action—setting a 30-day limit— is arbitrary and capricious.

In caselaw addressing the governing bodies of cities, the law prohibits arbitrary and capricious actions. Arbitrary and capricious acts are terms often used together, meaning "a determination made without consideration of or regard for facts, circumstances, fixed rules, or procedures." Black's Law Dictionary 129 (11th ed. 2019).

We are unpersuaded by the owners' arguments. It was not arbitrary and capricious for the City to order the property owners to demolish the duplex within 30 days. While they requested to restore the structure from its concrete bones and Wolf admitted it could be done, the governing body heard substantial evidence of the damage and health hazards in the building. Wolf also stated that the structure needed replaced in its entirety.

At the hearing, the property owners' agents told the governing body that the work they planned to do—remove everything from the structure except the concrete bones— could be done within 30 days. It was not unreasonable for the City to expect them to remove the concrete bones as well. As the City also points out, the demolition permits are only valid for 30 days under Norton City Code 4-107, so demolition is generally expected to be completed in that time frame.

We do not intend to substitute our judgment for the City's judgment on the extent of demolition needed or how long it will take to reasonably accomplish this task. We also understand that once the work is commenced, extensions of the demolition permit can be granted.

The owners also argue that the City failed to follow the law in two respects and those failures are arbitrary and capricious. See *Lawrence Preservation Alliance, Inc. v. Allen Realty, Inc.*, 16 Kan. App. 2d 93, 102-03, 819 P.2d 138 (1991).

First, the property owners note that Resolution 10-2021 does not contain the requirement of "a statement that if the owner of such structure fails to commence the repair or removal of such structure within the time stated or fails to diligently prosecute the same until the work is completed, the governing body will cause the structure to be repaired or razed and removed." Norton City Code 4-407.

But Resolution 10-2021 does in fact contain a provision stating

> "[t]hat if the landowner or agent, fails to meet these timeframes set forth herein, and fails to remove said structure and make such property safe, the governing body orders that the structure be vacated and closed; that the structure shall be razed, demolished and removed; and that the property be made safe."

We see no failure by the City to follow the statute here.

Second, the owners argue that the City failed to follow K.S.A. 12-1753 and Norton City Code 4-407 when sending them a copy of Resolution 10-2021. The resolution required the city clerk to mail a copy of the resolution to the property owners by certified, restricted mail within three days of publication. Publication was made on May 12, 2021.

8

The record does not show when the resolution was mailed, but the owners did not receive it until June 1. The property owners argue that receiving the resolution only three days before the deadline to finish demolition is not reasonable and the City failed to follow the statute and City code provision.

The City responds that the resolution was mailed to the property owners as required by law. The City asserts it has no control over how long a certified letter takes to reach a party or at what point the party might pick up and sign for the mail. The City also notes that the property owners received notice of the resolution because their agents were present at the hearing on May 5.

We cannot determine from the record whether the City complied with its own resolution and mailed a copy to the owners within three days of publication. Nowhere in the record does it show when it was mailed. That the owners did not receive the resolution until June 1 does not necessarily mean the City did not timely mail it. Under Supreme Court Rule 6.02(a)(4) (2022 Kan. S. Ct. R. at 35), when facts are necessary to an argument, the record must supply those facts, and a party relying on those facts must provide an appellate court with a citation to the record where the facts can be verified. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, Syl. ¶ 3, 294 P.3d 287 (2013). The owners have not done so here.

The City did not arbitrarily or capriciously fail to give notice to the owners.

*We see no due process violations by the City.*

The owners argue the city council did not give reasonable notice of the resolution ordering the demolition of the duplex because they only received the resolution three days before its deadline to finish demolition. In response, the City argues that the owners were given reasonable notice of the resolution ordering demolition of the duplex because

9

their agents were at the hearing and testified when the governing body moved to order demolition of the property within 30 days. The City also mailed a copy of the resolution to the owners following its publication.

The owners' argument rests on the date they received a copy of the resolution, but there is no information in the record on appeal showing when it was mailed. All the record shows is that it was mailed after publication on May 14 and the owners received it on June 1. No matter when the resolution was mailed, the owners received notice that was reasonably calculated under the circumstances.

The property owners were not denied due process at the city council level because the City provided notice that was reasonably calculated under the circumstances to tell them about the pendency of the action and allow them to object.

The essential elements of due process of law are notice and an opportunity to be heard at a meaningful time and meaningful manner. "Due process is flexible and calls for such procedural protections as the particular situation demands." *In re Care & Treatment of Ellison*, 305 Kan. 519, 526, 385 P.3d 15 (2016) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 [1972]). To satisfy due process, notice must be reasonably calculated under the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to object. *Nguyen v. IBP, Inc.*, 266 Kan. 580, 587, 972 P.2d 747 (1999).

The owners had notice and a reasonable opportunity to be heard.

*We see no due process violation by the district court.*

The owners argue they were denied due process in the district court because the court did not give notice that it was making its decision based solely on the record rather

than allowing for arguments. They assert that the district court's failure to hold a hearing or give notice deprived them of due process.

The City argues that it is clear a trial de novo was not required under K.S.A. 60-2101(d), which governs appeals from judgments of political or taxing subdivisions exercising judicial or quasi-judicial functions: "The clerk shall thereupon docket the same as an action in the district court, which court shall then proceed to review the same, either with or without additional pleadings and evidence, and enter such order or judgment as justice shall require."

The City asserts that reviewing a case on the record is what the statute contemplates, and it prevents the district court from conducting a trial de novo. It states that the owners' only interest was in presenting additional evidence to the district court, which is not the purpose of an administrative appeal.

In denying the owners' appeal based solely on the record, the district court cited *Ernatt v. City of Wichita*, No. 120,908, 2020 WL 6685316 (Kan. App. 2020) (unpublished opinion). *Ernatt* explained that K.S.A. 60-2101(d) gives a district court discretion to hold an evidentiary hearing where parties can recreate evidence presented before the political subdivision to determine whether its decision was within the scope of its authority, was supported by substantial evidence, or was arbitrary or capricious. 2020 WL 6685316, at *6; see *Denning v. Johnson County Sheriff's Civil Service Bd.*, 299 Kan. 1070, 1075, 329 P.3d 440 (2014).

The decision in *Ernatt* was based on *Davenport Pasture, LP v. Board of Morris County Comm'rs*, 31 Kan. App. 2d 217, 62 P.3d 699 (2003), in which a panel of this court found that the district court exceeded its authority under K.S.A. 60-2101(d) by receiving evidence and making an independent judgment on the merits of issues not addressed by the board of commissioners.

11

Here, the district court found it was unnecessary to hold an evidentiary hearing because the owners provided all the pertinent documents in the record. The district court had all the information necessary to reach a decision and could not have accepted additional evidence.

Based on *Ernatt*, the owners here were not denied due process by the district court because the court based its decision on the record. K.S.A. 60-2101(d) says the district court can proceed with or without additional evidence or proceedings. Kansas courts have held that district courts have exceeded their authority under the statute by accepting evidence. See *Ernatt*, 2020 WL 6685316, at *6; *Davenport Pasture, LP*, 31 Kan. App. 2d at 217. The district court based its decision on a thorough record from the city council hearing that the property owners provided, and its review was limited to whether the City exceeded its authority, had sufficient evidence, or acted fraudulently, arbitrarily, or capriciously.

The property owners' due process rights were not violated by the district court.

Affirmed.